EDWARD PETERSON COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES, v. ULYSSES S. SCHLUETER CONSTRUCTION CO., A PARTNERSHIP, APPELLANT.

140 N. W. 2d 830

Filed March 11, 1966. No. 36147.

Sidner, Gunderson, Svoboda & Schilke, for appellant.

Hotz, Hotz, Taylor & Moylan, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BRODKEY, District Judge.

SPENCER, J.

This is an action brought by Edward Peterson Company and Stone Products, Inc., Nebraska corporations, against Ulysses S. Schlueter Construction Co., a partnership, for rock alleged to have been sold pursuant to the terms of an oral contract. The rock was sold by Stone Products, Inc., and the amount of the claim, which had been assigned to Edward Peterson Company, is $10,-946.85. For convenience, Stone Products, Inc., will be designated as plaintiff and the partnership as defendant. Any interest of Edward Peterson Company arises by virtue of the assignment, which is admitted.

Defendant filed an answer to the petition of the plaintiff, which consisted of a general denial, and a cross-petition. Plaintiff filed an answer to the cross-petition, consisting of a general denial. The case was tried to a jury, and a verdict was returned for the plaintiff. Judgment was entered thereon, and an appeal has been perfected to this court.

Defendant sets out three assignments of error, but each is directed to the sufficiency of the evidence. We concern ouselves therefore only with that question, and summarize the evidence we deem pertinent on this point.

In the summer of 1959, the defendant, who was in the earthmoving business, subcontracted to build certain roads on a missile site near Arlington, Nebraska. Defendant's contract was with Malan-Grove, who held the prime contract for the missile site with the Corps of Engineers. The defendant, to perform the contract, needed rock which met certain detailed specifications.

Plaintiff's office manager testified as to the delivery of the rock; that the plaintiff had to meet certain specifications for the rock which was delivered; and that the specifications influenced the price which was charged. Robert G. Peterson, vice president of plaintiff, testified that the office manager told him the rock was not meeting specifications but didn't think it was serious and could be corrected by adding sand.

The negotiations for the plaintiff were handled by plaintiff's president, Ralph Saathoff, who had been in the rock business for approximately 40 years. Saathoff, with plaintiff's salesmen, visited with Ulysses S. Schlueter, hereinafter referred to as Schlueter, and defendant's general foreman, Shanks, about furnishing rock for the project. They were told the rock required was crushed rock which had to meet the specifications set up by the Corps of Engineers. Saathoff was familiar with these specifications. They were not unusual except for the fact that they required a 2-millimeter test, which is a fineness test. This was the first time he recalled plaintiff had encountered this particular test. He testified the average construction man would not be able to tell by looking at the rock whether it met the tests required by the specifications. If there were deficiencies, the average person could not tell whether they were serious or minor. A copy of the specifications was furnished the plaintiff. Thereafter, Saathoff submitted an oral

bid for the plaintiff. About a week thereafter, plaintiff was advised to start delivering the rock and purchase orders would be sent, but no purchase orders were ever received.

It was Saathoff's testimony that Shanks told him that he would come down to the quarry and pick up a sample of the rock and would submit it to the testing laboratory. He was not advised that any of the samples did not meet specifications before he started delivery on approximately July 21, 1959. By July 27, plaintiff had information that the rock did not meet the specifications. Plaintiff submitted several samples of the rock on that date to the testing laboratory. None of these samples met the specifications. The results of these tests were not received until August 1, 1959, which was the date on which the last delivery was made. Saathoff testified that he was aware that the stone was being furnished on a government contract, and that he was aware that the rock was not meeting the specifications sometime before July 27, 1959. Saathoff was also aware that the Corps of Engineers or Malan-Grove, the prime contractor, had refused to accept the road because the rock did not meet specifications and that at least 500 feet of it had to be removed.

Plaintiff's salesman testified that the rock had to meet certain specifications, and that Shanks told Saathoff that he would get him a set of specifications. There was some discussion about samples to be taken from the quarry and that some samples were taken. His testimony then is as follows: "Q- Do you know whether or not the sample did meet the specifications? A- Well, the only thing I could say to that would be he made the statement at the time that if Stone Products got the rock to specifications that they would notify us to deliver so I just took it for granted that it met specifications when we were notified."

Plaintiff's salesman was the coordinator between the quarry and the missile site. He was told by Shanks that

the rock was not meeting the specifications. He testified: "We all agreed it was logical to start running tests to the Nebraska Testing Laboratories. I think you will find some run in July. I didn't pull the tests myself. I picked up the tests and put them in the car and took them to the testing laboratory in Omaha and turned them over to them. By the time that the reports had come back we had orders to stop our hauling of rocks to the missile site * * *."

Plaintiff produced the vice president of the testing laboratory as a witness. He identified test reports taken over the 10-day period the rock was being delivered, and in each instance the test sample failed to meet the specifications, and he testified that plaintiff was so advised. He also testified that the specifications would not change by the handling of the materials.

At the close of plaintiff's testimony, defendant moved to dismiss the petition. This motion was overruled, and defendant's testimony was adduced.

Ulysses S. Schlueter testified that he was present with Shanks at the conversation with Saathoff and plaintiff's salesman. The main topic of the conversation was whether or not rock could be furnished to meet the specifications. Samples were submitted before the rock was ordered. The first sample did not pass specifications. Subsequent samples were obtained and tested, and eventually one of them passed specifications. Stone Products, Inc., was then advised to start hauling the rock. Shanks, who is no longer employed by defendant, was in charge of the project under his direction. Shanks' present whereabouts is unknown, although defendant's attorneys have tried to locate him.

After the hauling started, a representative of the testing laboratories took samples on the job and furnished defendant and Malan-Grove with copies of their reports. These reports were received from 3 to 4 days after the tests were taken. The plaintiff was promptly advised that the rock was not meeting specifications. Defendant

made every effort to have the specifications relaxed and the road as constructed accepted, but was unsuccessful. Defendant was ordered by the principal contractor to remove the rock and to reconstruct the road with rock meeting the specifications. The rock delivered by plaintiff was removed, the road was torn up, and was replaced by defendant with other rock at a cost of $9,015.60. When the rock furnished by plaintiff was removed from the road, it was pushed to the side in a pile and the plaintiff was requested to remove it.

Exhibit 11, which was offered and received during the cross-examination of Saathoff, is a letter dated January 20, 1960, from the defendant to the plaintiff. It recites that the cost of removal of plaintiff's rock from the road and other expenses incident thereto incurred by the defendant was $9,015.60. Plaintiff had been requested to remove the rock and had failed to do so. Defendant had been able to sell 1,647.35 tons of it to the engineers for $5,600.99, leaving $3,414.61 due the defendant from the plaintiff. There were 1,487 tons of the rejected rock still piled near the point of its removal, defendant was obligated to have it removed, and unless the plaintiff moved it within 7 days, the defendant would be forced to do so. This letter was initially received for the limited purpose of showing notice, but the information therein was put into the record during the examination of Schlueter.

It is defendant's position that the evidence is insufficient to sustain a verdict for the plaintiff. The rock ordered was to meet established specifications. It did not meet these specifications. Defendant argues the motion to dismiss should have been sustained at the close of the plaintiff's evidence or, in any event, at the close of all of the evidence.

In every case, before the evidence is submitted to the jury there is a preliminary question for the court to decide when properly raised, not whether there is literally no evidence but whether there is any evidence upon

which a jury can properly proceed to find a verdict for the party producing it upon whom the burden of proof is imposed. See Krichau v. Chicago, B. & Q. R.R. Co., 150 Neb. 498, 34 N. W. 2d 899.

It is plaintiff's position that there is a definite dispute as to the actual agreement of the parties, and that this raises a question of fact to be determined by the jury. Plaintiff cites Schwerin v. Andersen, 107 Neb. 138, 185 N. W. 321, in which we held: "Where the evidence as to the terms of an oral contract is conflicting, it is for the jury to pass upon the facts and to determine what the contract was, under proper instructions." We do not agree with plaintiff's premise. The evidence is conclusive that plaintiff knew the defendant was required to use rock meeting definite specifications. Plaintiff's evidence indicates it understood at all times it was to furnish rock which would meet these specifications. The following testimony of Saathoff is pertinent on these points: "Q- Mr. Saathoff, you were asked something concerning the fact that these tests were made after the road was completed. It surely wasn't your understanding that this rock could be anything you wanted to deliver as long as the— A- No, I don't think that is true. Q- You did understand that those samples had to be conducted throughout the delivery from the quarry at other points? This was your understanding, wasn't it? A- It wouldn't comply with the specifications. Q- Obviously if the rock you delivered didn't meet specifications the final load wouldn't meet specifications or the final road? A- That is correct. Q- And reading from the same specifications that you were asked to before, would you read the sentence beginning with Samples? A- Samples of aggregates shall be tested at regular intervals during production as required by the Contracting Officer. These samples will be obtained at the processing plant, from railroad cars, trucks, stockpiles, or other locations designed by the Contracting Officer and will be the basis for approval

of specific lots from the standpoint of all requirements. When deemed necessary, the sampling of materials will be observed and supervised by the Contracting Officer. Unless otherwise directed by the Contracting Officer the procedures outlined in ASTM D 75 will be followed for sampling of the materials. Q- That is far enough. And showing you Exhibit '8' again which is a test by the Nebraska Testing Laboratory and as to the method of test they were under the specifications that you were to meet on this contract? A- Yes. Q- And you never had any dispute or argument about this? A- The specifications? Q- Yes. A- No. Q- At all times you were aware that the rock you were to deliver to Mr. Schlueter was to comply with the specifications? A- That is correct."

The evidence is conclusive that the rock furnished by the plaintiff did not meet the specifications. It is also undisputed that the road built with the rock furnished by the plaintiff had to be torn up and rebuilt. If it is plaintiff's position that the rock was delivered on the basis of an order which waived the specifications, the plaintiff wholly failed to meet the burden of proving that fact. Plaintiff's preliminary negotiations disclosed the detailed specifications which the defendant had to meet. The negotiations concerned rock to meet those specifications, and plaintiff was furnished with a copy of them.

This case is governed by the rule that where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question as a matter of law. See Thomas v. Owen, 169 Neb. 369, 99 N. W. 2d 605.

The defendant's motion for a directed verdict on the plaintiff's petition at the close of the evidence should have been sustained.

For the reasons stated, the judgment herein is reversed and the cause remanded with directions to dismiss the

petition of the plaintiff and for a new trial on the cross-petition of the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.