George D. BORDEN,
Appellant-Respondent,

v.

PHILLIPS PETROLEUM COMPANY,
Respondent-Appellant,

and

Vick-Lintecum General Contractors, Inc. and J. Palmer Jeffries d/b/a J & O Plumbing Company, Respondents.

Nos. KCD 27171, KCD 27172.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Moore, Lay & Deis, Platte City, for appellant-respondent George D. Borden.

James, Odegard & Millert, Kansas City, for respondent-appellant Phillips Petroleum Co.

Niewald, Riejord & Waldeck, Kansas City, for respondent Vick-Lintecum General Contractors, Inc.

Hale, Kincaid, Waters & Allen, Liberty, for respondent J. Palmer Jeffries d/b/a J & O Plumbing Co.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Lessee of gasoline service station brought suit against owner and contractors employed in remodeling station for damages for loss of gasoline. Jury found in favor of lessee and against owner and in favor of contractors and against lessee. Owner appealed from judgment in favor of lessee. Lessee appealed from judgment in favor of contractors. The appeals have been consolidated.

Phillips Petroleum is the owner of a service station at the intersection of Highways 45 and 9 in Platte County, Missouri. Since around 1960, George D. Borden has operated the station under lease from Phillips. The lease in effect at the time here pertinent contained no provision requiring the lessor to repair the premises or to keep them in good repair. It did permit the lessor to remodel the improvements upon notice to the lessee. In September, 1970, Phillips undertook to remodel the premises by removing the existing concrete islands and constructing new ones and by installing four new dispensers to replace existing ones. Phillips contracted with Vick-Lintecum General Contractors, Inc. to perform the work. Installation of the new dispensers required partial replacement of underground lines from storage tanks to the dispensers. Vick-Lintecum employed J. Palmer Jeffries to do such plumbing work.

The concrete islands on which the dispensers were located were removed in an area of some three by five feet and an excavation of some two feet below the surface was made, exposing the existing service lines. Jeffries removed the lines from the dispensers to an elbow connection on the service line. The elbow was some eight inches beyond the wall of the excavation. Before the connection was removed, the pressure pump in the tank was turned off and the line was capped. The pump was then turned on again to permit service to other dispensers on the same line. The line to the new dispensers was then measured and laid and attached to the service line. The new line was capped at the point of attachment to the dispenser. It remained uncovered for two or three days until the new island was laid. Thereafter the new dispenser was installed.

The dispenser here involved was installed toward the end of September, 1970. In December, Borden's bookkeeper told him that the records showed a considerable loss of Flite-Fuel, the Phillips high-test gasoline. Borden could not account for the loss. He notified Phillips and on either January 9 or 10, 1971, Phillips representatives dug up the concrete paving and discovered a leak in the service line from the Flite-Fuel tank. The leak was in the old service line at a point, described by witnesses, as from one to eighteen inches from the point where Jeffries had removed the old connection and attached the new line. Borden who was present when the source of the leak was discovered described it as being "by pump three about eighteen inches or so under the concrete that had never been removed in the drive way." He described the defect in the pipe as a "split" which ran between two pitted holes in the pipe. The defective piece of pipe was removed and replaced. The removed piece was lost by Phillips and not produced at the trial.

According to plaintiff's records, he lost some 28,000 gallons of gasoline from September, 1970 until the leak was repaired. Plaintiff brought suit against Phillips, Vick-Lintecum and Jeffries for the lost gasoline for which he had paid Phillips, including rental, $9,011.08.

Plaintiff's claim against Vick-Lintecum and Jeffries was submitted to the jury on the theory that Jeffries, in installing connecting pipes, caused a hole or split to come in existing pipes. The claim against Phillips was submitted on the theory that either the persons employed by them to install the new dispensers caused a hole or split in existing pipes, or that after the dispensers and connecting pipes were replaced and installed, Phillips failed to inspect the gasoline dispensing system to determine whether or not it was leaking.

The verdict was in favor of plaintiff and against Phillips for $8,000. The verdict was

in favor of Vick-Lintecum and Jeffries and against plaintiff.

On Borden's appeal, he contends that the trial court erred in sustaining an objection to his witness, Larry Engleman, testifying as an expert witness. The trial court sustained the objection on the grounds that, although in answers to interrogatories, plaintiff had listed Engleman as a witness, plaintiff's response to an interrogatory calling for the name of any person employed by plaintiff or acting in his behalf as an expert on the gasoline leakage was "None." In his brief, Borden asserts that Engleman "was not employed or acting on behalf of George Borden as an expert but was merely called upon to give an opinion as a skilled witness who possessed experience not acquired by an ordinary person with respect to piping."

■ The difficulty with this assignment is that, upon the sustaining of the objection by the trial court, no offer of proof as to what the witness would testify to was made. Absent such an offer of proof, there is no way to determine what if any prejudice resulted to plaintiff from the trial court's ruling. Therefore, there is no basis for appellate review of the trial court's action. *Moore v. Parks*, 458 S.W.2d 344, 348[5, 6] (Mo.1970); *Thayer v. Sommer*, 356 S.W.2d 72, 80[11, 12] (Mo.1962).

■ Appellant Borden's second point is that his motion for new trial should have been sustained because the verdict of the jury was against the evidence and opposed to natural and physical laws. The weight of the evidence is not a matter for an appellate court. *Wilson v. Concordia Farmers Mutual Insurance Co.*, 479 S.W.2d 159, · 161[1] (Mo.App.1972); *Neavill v. Klemp*, 427 S.W.2d 446, 449–450[13–15] (Mo.1968). This is particularly true in a case such as this in which the jury has found against the party having the burden of proof. *Strickner v. Brown*, 491 S.W.2d 253, 255–256[3, 4] (Mo. 1973). No relief may be granted by this court on the basis of this assignment of error.

Turning to the appeal of Phillips, that appellant's first contention is that the trial court erred in failing to sustain its motion for a directed verdict at the close of all of the evidence and its post-trial motion for judgment, because Phillips as owner-lessor had no duty to keep the premises in repair or to inspect the pipe for leaks. Phillips also contends that its motions should have been sustained because of the absence of credible evidence to support a verdict against it.

Respondent Borden states that he is relying upon the rule which requires a lessor who has no duty to repair leased premises but who voluntarily undertakes to do so to make such repairs in a non-negligent manner. See *Malon v. Service and Management Company*, 416 S.W.2d 44, 47[3] (Mo. App.1967). He further relies on the rule that lessor is not relieved of liability in such instance by reason of his employing an independent contractor to do the work. See *Vitale v. Duerbeck*, 332 Mo. 1184, 62 S.W.2d 559, 560–561[1] (1933).

■ In this case, the claim against Phillips was submitted by Borden on the grounds that the contractors engaged by Phillips negligently made the repairs or alternatively that Phillips' failure to inspect the work was negligence. The charge of negligence which would have been imputed to Phillips by reason of the relationship with Vick-Lintecum and Jeffries was submitted against those two parties as the basis of Borden's recovery against them. The jury found in favor of Vick-Lintecum and Jeffries and thereby found that neither of them had negligently caused the break in the pipe. Having so found with respect to those parties and there being no error presented by Borden requiring retrial of the claim against Vick-Lintecum and Jeffries, Borden cannot recover against Phillips on the asserted ground of negligence on the part of the contractors. *Lynch v. Hill*, 443 S.W.2d 812, 818[6, 7] [8] (Mo.1969); *Stoutimore v. Atchison, T. & S.F. Ry. Co.*, 338 Mo. 463, 92 S.W.2d 658, 659–660[1] (1936).

There remains then, insofar as Phillips' assertion is concerned, the question of whether or not the alternative charge of negligence on the part of Phillips in failing

to inspect the gasoline dispensing system after the pumps and connecting pipes had been replaced and installed was a ground upon which respondent might recover against Phillips.

■ Assuming, without the necessity for so deciding in this case, that Phillips owed Borden the duty of inspecting the work of its contractors (see *Schwartz v. Zulka*, 70 N.J.Super. 256, 175 A.2d 465, 467–468[2–4] (1961); 2 Restatement of Torts 2d § 412, p. 382 (1965)), plaintiff's case must fail because of the absence of evidence that an inspection would have reasonably been expected to uncover the defect in the pipe which caused the leak.

The break in the pipe occurred in a section of pipe not replaced by Jeffries. Jeffries did remove a connection at a point from one to eighteen inches, according to various witnesses, from where the break occurred. According to plaintiff, who saw the work in progress and could see the protruding end of the pipe which did break, the pipe was rusty and covered with dirt. When it was removed following the discovery of the source of the leak, plaintiff found that on the bottom of the pipe it was rusted and pitted, with a four or five-inch split between two holes. Another witness for plaintiff testified that the break in the pipe was such that one half of the gasoline going through the pipe would be lost through the hole. However, for some three days during which the new pump was being installed, Borden observed no evidence of a leak in the area which had been excavated for the connection between the old and new pipe. Although plaintiff is not bound by Jeffries' testimony, Jeffries' testimony on this score is consistent with that of plaintiff. The feeder line in which the break occurred was in use during the three-day period, except for brief times when it was shut down to permit Jeffries to remove the old fittings and replace them. Thus, there was no evidence that, during the period in which the feeder line was exposed and before it was re-covered with dirt and sand and eventually with concrete, there was a leak in the old feeder pipe. Borden himself testified that, insofar as his observation was concerned, there was no indication to him of any trouble in the feeder line system.

Plaintiff's recovery on the theory that failure to inspect caused the loss must depend upon proof that inspection would have revealed the leak. In this case, the inspection would necessarily have to have been undertaken prior to the time that the excavation was closed and the area covered with concrete. There was no evidence that the leak existed at that time and therefore no proof that proper inspection would have revealed it.

Plaintiff asserts that his evidence that his gasoline losses increased "astronomically" during September would justify the conclusion that the leak began at or near the time of the replacement of the pump involved and, inferentially, further justify the conclusion that inspection prior to putting the new pump in service would have revealed the defect. The evidence did show that the replaced pump went into service on September 25, 1970. Although plaintiff's wife and bookkeeper testified to a loss of some 4,000 gallons of fuel in September, 1970, compared with a previous high loss of 559 gallons in May, 1970, it was shown that this computation failed to consider the gasoline on hand and in the tank at the end of the month, some 2,939 gallons. In any event, a loss of the proportions of 1,200 gallons per month, which is what the testimony reduces it to, would undoubtedly have been such as to have produced some evidence of leakage in the excavation had it been occurring before the excavation was filled. There was no testimony to such effect and there was no basis to assume that the break and the remodeling occurred simultaneously.

At the trial, Borden amended his petition to specify a failure to inspect or test the gasoline dispensing system after the pumps had been replaced. At the trial, failure to inspect alone was the ground of negligence submitted and on this appeal he argues both failure to inspect and to test. Specifically he contends that the jury could have found negligence on the part of Phillips for failing to require a "more professional type

of inspection" than merely putting the lines under pressure and conducting a visual check for leaks. At the trial, plaintiff offered no evidence whatsoever about what test could or should have been made. Jeffries did testify that in new service station construction gasoline line plumbing is sometimes checked by putting it under air pressure. Jeffries explained why such procedure was not followed in the case of an operating station such as that of Borden. His testimony would not have supported a finding that such a test should have been employed. There was no evidence from which the jury might have concluded that some unidentified "more professional" test should have been required.

Thus to return a verdict in favor of plaintiff on his theory of failure to inspect, the jury must first have inferred that the leak was in existence during the remodeling and further have inferred that inspection would have revealed the defect. Such conclusion could have been reached only by surmise and speculation as there was no evidence to support it. "A jury's verdict cannot be based upon mere speculation or conjecture." *Quinn v. St. Louis Public Service Company*, 318 S.W.2d 316, 323[11] (Mo.1958).

The judgment in favor of Vick-Lintecum General Contractors, Inc. and J. Palmer Jeffries is affirmed. The judgment in favor of George D. Borden against Phillips Petroleum Company is reversed.

Affirmed in part; reversed in part.

All concur.