JEROME J. FOLTZ, APPELLANT, V. NORTHWESTERN BELL
TELEPHONE COMPANY, A CORPORATION, AND COEN
CONSTRUCTION COMPANY, APPELLEES.

376 N.W.2d 301

Filed November 8, 1985.   No. 84-306.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, and
Thomas M. Monaghan of Monaghan, Tiedeman & Lynch, for
appellant.

Joseph K. Meusey and Robert F. Rossiter, Jr., of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee Northwestern Bell.

Melvin C. Hansen of Hansen, Engles & Locher, P.C., for appellee Coen Construction.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Shanahan, J.

After judgment on a verdict in favor of Coen Construction Company (Coen) and Northwestern Bell Telephone Company (Bell), Jerome Foltz, as next friend of his son, Timothy, appeals from the district court for Platte County. We affirm.

For removal and salvage of the telephone lines and poles, Bell and Coen, on January 1, 1974, entered a written contract which, inter alia, included an indemnification agreement and provided:

> 4. . . . Remove poles and associated hardware, backfill pole hole and dispose of old poles and wire.
>
> . . . .
>
> 18. The Company's Representative will inspect all work and materials furnished by the Contractor and may condemn or reject any or all of such work or materials if in his opinion the same are not in accordance with this contract or with the specifications and changes . . . .
>
> . . . .
>
> 31. The Contractor assumes full responsibility for all injuries to, or death of, any person or persons or for damages to property, including property and services of the Company, and for all claims, losses or expenses which may in any way arise out of the performance of the work, whether caused by negligence or otherwise . . . .
>
> . . . .
>
> 37. The relationship of the Contractor with the Company hereunder shall be that of an independent contractor. The Contractor shall have full control and direction over the mode and manner of doing the work and of his personnel employed on or about the work.

As a record of its poles and their location, Bell maintained form "E297A" which contained dates of pole installations, length and class of poles, whether a pole was weatherproofed, and the year a pole was replaced or removed. The project contracted by Coen involved removal of at least 2,600 poles over a span of 150 miles, as well as salvage of wire and hardware from the pole line. If any pole was being used to support a farmer's fence, Coen severed such pole at a height suitable for continued use consistent with other posts in the fence. Poles outside fence lines were cut by Coen at a height not less than 4 feet above ground level and pulled from the ground. Bell's employees rolled all wire removed from poles. Coen kept the removed poles, hardware, and noncopper wire salvaged, while Bell retained all copper wire from the pole lines.

The pole line in question was located approximately 2 feet east of a fence on the Foltz farm. The line running from the pole line to the Foltz residence became useless after installation of underground service to Foltz. Bell generally kept itself informed about Coen's work, and whenever a telephone line crossed a major road, Bell's representatives made certain that traffic was not impaired. A Bell inspector periodically drove through the work area and occasionally stopped at random to check Coen's work. Also, the foreman of Bell's wire-winding crew kept track of Coen's progress. Coen and Bell's inspector had copies of form E297A to determine the number of poles per mile, and to have at hand other pertinent information about the pole lines.

Coen completed its work in April 1974. Before payment to Coen at conclusion of the work, a Bell representative accompanied Coen on an inspection of the area. This included a truck tour on the roads adjacent to the various pole lines, with an occasional spot check of the completed work. Bell was satisfied with Coen's work and accepted the completed project.

In July 1978 Timothy, 16 years of age, was operating a northbound tractor pulling a rotary mower to cut grass and weeds in the north-south ditch between Foltz' fence and the county road. This was the ditch where Coen, some 4 years earlier, had worked in removing Bell's pole line. Foltz was

required to mow the ditch twice annually. See Neb. Rev. Stat. § 39-1811(1) (Reissue 1984). During that mowing operation next to Foltz' fence line, the tractor driven by Timothy tilted slightly to the right due to the slope of the ditch bank. Brome grass in the ditch was approximately 3 feet tall. The left rear wheel of the tractor struck a stub of a telephone pole concealed by grass at a point approximately 2 feet east of Foltz' fence line. As a result of the tractor's impact with the pole, Timothy was thrown from the tractor and sustained serious bodily injury with consequential medical expenses.

Bell investigated the accident and, based on form E297A, concluded that Timothy's tractor had struck the stump of pole No. 4, originally a 16-foot class 10 eastern pine installed in 1933. In 1944 pole No. 4 was replaced with a 10-foot class 10 weatherproofed eastern pine.

Foltz, as next friend for Timothy, filed suit against Bell and Coen. In paragraph 4 of his second amended petition Foltz alleged:

> During 1974 Defendant Northwestern Bell Telephone Company installed the line from the southeast corner of the Foltz farm to the Foltz residence underground and contracted and agreed with the Defendant Coen Construction Company to remove and salvage the pole and wire line. . . . At all times material hereto the Defendant Coen Construction Company was subject to the direction and control, acted on behalf of, and was in the employ of the Defendant Northwestern Bell Telephone Company. *Defendants removed all of the poles save one, which defendants topped at a point approximately one and one-half feet above ground level. The portion of the pole remaining above ground level was weathered, gray and virtually invisible* when surrounded by grasses and foliage which were wont in nature to grow in the area between Foltz's east fence and the west edge of the main traveled portion of the county road bordering the east line of the Foltz farm.

(Emphasis supplied.)

Specifications of negligence on the part of Bell and Coen were alleged in paragraph 6 of Foltz' petition. (We have designated the grouping of such specifications as [A] and [B].)

Foltz alleged:

## [A]

The collision between the tractor and the butt of the telephone pole was proximately caused by the negligence of the defendants in the following particulars:

(a)   Defendants failed to remove the butt from an area which it knew or should have known would have to be traveled by anyone farming the adjacent land in order to destroy weeds growing thereon.

(b)   Defendants cut the poles off at a height above the ground too high to permit mowing equipment to pass safely over it but not high enough to prevent it from being obscured by grass and weeds which defendant knew or in the exercise of reasonable care should have known were wont in nature to grow up around it.

(c)   Defendants failed to place a suitable warning marker or flag upon said butt when it knew or in the exercise of reasonable care should have known that failure to do so would result in a collision.

(d)   Defendants failed to remove all of the poles and backfill the holes as required by the terms of [the Bell-Coen contract].

Immediately following the foregoing allegations of negligence by Bell and Coen, Foltz alleged:

## [B]

In addition to the foregoing acts of negligence, the defendant Northwestern Bell Telephone Company was, independently, guilty of negligence in the following particulars:

(a)   It failed to adequately inspect the work of removing and salvaging the telephone line from the [southeast] corner of plaintiff's farm to the plaintiff's homestead.

(b)   It failed to notify Defendant Coen Construction Company that the latter had failed to remove all the poles and backfill all the holes during the removal and salvaging of said telephone line.

(c)   It failed to notify plaintiff that its contractor had

failed to remove all the poles from said line and backfill all the holes during the removal and salvaging of said telephone line.

(d) It failed to condemn Coen Construction Company's failure to remove all the poles and backfill all the holes during the removal and salvaging of said telephone line.

(e) It failed to remove the remaining poles and backfill the holes when it knew or in the exercise of reasonable care should have known that one of said poles had not been removed and the hole backfilled during the removal and salvaging of said telephone line.

In its answer Bell, after denying any negligence on its part, alleged Coen's status as an independent contractor.

During the trial, evidence indicated that none of the Foltz family had ever noticed the pole stub in the ditch. Testimony about the height of the pole butt ranged from approximately 10 inches to 2 feet. When the accident occurred, the area where Timothy had been mowing was not generally cut by Foltz. The color of the pole was such that, unless one were immediately above the pole and looking straight downward, the pole was indistinguishable from the tall, surrounding grass. As described by Jerome Foltz: "You couldn't see the stub until you were right over the top of it." Rose Foltz, Timothy's mother, testified: "You couldn't see [the pole stub] until you were right there on it, and that brome grass, it blended in with the pole and you couldn't see it." Timothy acknowledged that he had never seen "a pole sticking out of the ground," although he had walked and driven past the severed pole and worked around it numerous times. Coen's employees testified that poles in fence lines had been cut at a height not less than 2 feet above the ground, denied contact with the pole in question, and further testified that Coen had never cut any pole as short as the one involved in the accident. A representative of Bell testified that the presence of weatherproofing on the pole in question indicated the stub's height was 10 to 12 inches above ground level. Bell's witness concluded that the stub was the remnant of one of Bell's poles. One of Foltz' witnesses, who lived near

Bell's right-of-way, testified that, while snowmobiling in the right-of-way during the winter of 1982-83, he had come across stumps of poles with a height less than 2 feet. No one had informed Bell concerning any pole butts in its right-of-way, and Bell did not discover any such pole butts in the course of Coen's work or during its inspection of Coen's completed work.

At the end of Foltz' case in chief, Bell and Coen moved for a directed verdict on the issue of liability. The court overruled Coen's motion. Also, the court overruled Bell's motion directed to Foltz' claim based upon vicarious liability for Coen's negligence (paragraph 6[A] of the petition) but sustained Bell's motion regarding Foltz' claim that Bell was "independently guilty of negligence" as specified in paragraph 6[B] of the petition.

When all evidence had been concluded, Foltz requested reconsideration of the directed verdict in favor of Bell on the issue of independent negligence and asked to amend his petition, namely, an additional allegation that Bell, sometime before 1974, had severed the pole in question and negligently allowed the stump of the severed pole to remain in Bell's right-of-way. Foltz argued that Coen had acknowledged the fact that no pole in the project was cut at a height less than 2 feet above the ground, and, therefore, the jury could have found that the pole in question might have been severed by Bell at a time outside the project involving Coen. The district court denied Foltz' motion to amend his petition, noting that Foltz never asserted that Bell had severed any pole but, rather, had claimed that Coen had severed the pole as part of the contracted project, so that any liability on the part of Bell was vicarious.

Without request from any party, the court gave instruction No. 6 in part as follows:

> Before the plaintiff can recover against the defendant Richard Coen, doing business as Coen Construction Company, on his petition in this action, the burden is upon the plaintiff to prove by a preponderance of the evidence each and all of the following numbered propositions:
>
> 1. That said defendant, in the course of its contract with defendant Northwestern Bell Telephone Company, cut a certain telephone pole located adjacent to the farm

where plaintiff resides, and that in so doing, defendant Coen left the butt of said telephone pole standing, which butt of said pole is identified as Exhibit No. 18.

2. That defendant Coen was negligent in one or more of the following letters particulars:

(a) In failing to remove the butt of the telephone pole which he knew or in the exercise of reasonable care should have known would create an unreasonably dangerous condition.

(b) In failing to place a suitable warning on said butt of the telephone pole.

The jury returned a verdict for Coen and Bell.

Foltz assigns and argues 12 errors which can be reduced to the following errors claimed to have been committed by the district court: (1) In failing to direct a verdict against Coen; (2) In giving instruction No. 6, because that instruction is an improper statement of the bases for Coen's liability; (3) In directing a verdict for Bell on the issue of an owner's separate negligence concerning work done by an independent contractor; and (4) In not submitting to the jury the question whether Bell had failed to perform its nondelegable duty to obtain a negligence-free, unobstructed right-of-way as the result of Coen's work.

We begin by examining Foltz' claim that the court should have directed a verdict against Coen on the issue of negligence.

A party against whom a motion for directed verdict is aimed, here Coen, is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. See *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984). A court should not decide an issue as a matter of law unless the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom. See *Edward Peterson Co. v. Ulysses S. Schlueter Constr. Co.*, 179 Neb. 883, 140 N.W.2d 830 (1966). In view of the evidence there is no doubt that the injurious pole butt remained after someone had severed one of Bell's poles. In paragraph 4 of his petition, Foltz described the pole in question as one which had been cut off "at a point approximately one and one-half feet above ground

level." Coen's employees negatived their contact with the pole in question and cutting any pole at a height commensurate with the pole butt involved in the Foltz accident. Consequently, there was a question of fact, whether the particular pole involved in the accident was the same pole identified as a part of the Bell-Coen project alleged in Foltz' petition. Identification of the pole as a part of the project was a question of fact for resolution by the jury. From the evidence the jury would be entitled to conclude, and may well have determined, that the pole in question was not the pole descriptively alleged in Foltz' petition. The court correctly overruled Foltz' motion for a directed verdict against Coen.

Next, Foltz argues that instruction No. 6 limited Coen's liability to negligence in failing to remove the pole in question after it had been severed by Coen. Such limitation, Foltz contends, eliminated jury consideration of an alternative basis for Coen's liability, namely, failure to remove a pole previously cut by Bell. A reasonable reading of Foltz' petition, paragraphs 4 and 6[A], is that Coen removed all severed poles except one which Coen had "topped," that is, severed the upper part of the pole, "at a point approximately one and one-half feet above the ground" and that the part of the pole remaining above ground, the pole butt, was indistinguishable from the surrounding terrain and vegetation or practically concealed. Foltz makes the valid observation that instruction No. 6 eliminated consideration of Coen's liability based on required removal of Bell's poles previously cut but unremoved at commencement of Coen's contracted work for Bell. Such consequence explains Foltz' attempt to amend his petition and include an additional allegation that the particular pole had been cut by Bell before 1974 so that the pole butt was located within Bell's right-of-way when Coen commenced work on the project. We note, however, that Foltz has not assigned as error the court's refusal to allow amendment of the petition. Under the circumstances, whether Coen had a duty to remove poles which may have been cut by Bell was a question excluded by Foltz' pleading on which the case was tried, not by instruction No. 6 given by the court. The court, by instruction No. 6, correctly summarized Foltz' allegations and specifications of negligence in accordance with

Nebraska law. See *Greenberg v. Bishop Clarkson Memorial Hospital*, 201 Neb. 215, 266 N.W.2d 902 (1978) (a trial court has a duty to properly analyze, summarize, and submit to the jury the substance of allegations of negligence in a tort petition). Foltz further complains that, as an instruction on Coen's negligence, the court should have informed the jury regarding standards imposed by Bell for performance of its agreement with Coen. Whatever the standards of performance of the Bell-Coen contract, the issue presented in this case is one of negligent infliction of damage, and the question in the lawsuit related to conduct falling below a standard established by law to protect others against unreasonable risk of harm. The court properly instructed the jury on the issue of Coen's negligence.

We conclude, therefore, there was no error entering the verdict returned by the jury in favor of Coen.

Concerning disposition of his claim against Bell, Foltz complains about the directed verdict in favor of Bell on the issue of Bell's separate or independent negligence alleged in paragraph 6[B] of the petition. In substance, Foltz contends that the court erred in not permitting the jury to consider Bell's conduct regarding inspection of Coen's completed work. Each of Foltz' specifications of Bell's negligence, set forth in paragraph 6[B], is premised upon omitted action which Foltz claims should have been taken as a consequence of Bell's inspection of work done by Coen.

The basis upon which Bell might be held liable in failing to properly inspect Coen's work is found in Restatement (Second) of Torts § 412 at 382 (1965):

> One who is under a duty to exercise reasonable care to maintain land or chattels in such condition as not to involve unreasonable risk of bodily harm to others and who entrusts the work of repair and maintenance to an independent contractor, is subject to liability for bodily harm caused to them by his failure to exercise such care as the circumstances may reasonably require him to exercise to ascertain whether the land or chattel is in reasonably safe condition after the contractor's work is completed.

Under § 412 of the Restatement, *supra*, comment *e.* at 384 contains the following:

The rule stated in this Section subjects the employer of an independent contractor to liability only if, as a result of his failure to exercise such care as the circumstances require in inspecting the completed work done by his contractor, he fails to discover its bad condition and as a result bodily harm is caused to someone to whom he owes a duty of maintaining his land or chattels in reasonably safe condition.

See, also, Prosser and Keeton on the Law of Torts, *Imputed Negligence* § 71 (5th ed. 1984).

In determining whether the district court properly directed a verdict for Bell on the issue of separate or independent negligence regarding work done by Coen, we must first analyze the precise issue framed by Foltz' pleading. The issue raised by paragraph 6[B] of Foltz' petition is whether an inspection by Bell would have reasonably been expected to disclose the stub of the pole. See *Borden v. Phillips Petroleum Co.*, 541 S.W.2d 53 (Mo. App. 1976). Thus, Foltz cannot recover unless a reasonable inspection by Bell would have disclosed the pole butt within its right-of-way. For disposition of Foltz' appeal, we assume, but need not decide, that Bell had a duty to engage in a reasonable inspection consistent with § 412 of the Restatement, *supra*. Cf. *Lamb v. South Unit Jehovah's Witnesses*, 232 Minn. 259, 45 N.W.2d 403 (1950) (if an employer, accepting and resuming possession of work by an independent contractor, could have known from a reasonable inspection that there was a defect in the work, such employer may be liable for a third person's injury caused by that defective work). We again apply the standard for a directed verdict enunciated in *Cullinane v. Interstate Iron & Metal*, 216 Neb. 245, 343 N.W.2d 725 (1984), and *Edward Peterson Co. v. Ulysses S. Schlueter Constr. Co.*, 179 Neb. 883, 140 N.W.2d 830 (1966). Finally, we are cognizant of myriad factors which are involved in answering a question about the reasonableness of an employer's inspection of an independent contractor's completed work, as well as the difficulty of determining as a matter of law what constitutes a reasonable inspection. As stated in comment *c.* for § 412 of the Restatement, *supra* at 383:

[I]t is impossible to state hard and fast rules which can be

applied to determine automatically whether the employer has used such care as the circumstances of every particular case require. As in all cases in which the question involved is the amount of care which it is reasonable to require under the circumstances of the particular case, the general principle that the amount of care which must be used is proportionate to the danger involved in its absence and the burden which would be imposed by requiring it, is applicable . . . . The following factors are important: (1) the danger involved in the condition of the structure or chattel if the work is entrusted to the contractor is not carefully and skillfully done; (2) the character of the work—whether it is of the kind which a competent contractor is so likely to do properly that it is reasonable to rely entirely or to a certain extent upon his competence as a sufficient assurance that the work has been safely done; (3) the ability which the employer has or should have to appreciate the proper or improper character of the work done for him by the contractor; (4) the ease or difficulty of ascertaining the actual character of the completed work; and (5) the existence of a relation between the contractor's employer and those injured by the careless or incompetent work of the contractor which entitles them to expect that the employer will personally exercise care for their safety.

Foltz contends that Bell cannot avoid legal liability by wearing a blindfold to avoid uncovering any defect in Coen's work. The issue, however, is not whether Bell's inspection was reasonable but whether any reasonable inspection would have disclosed the pole butt. See, *Borden v. Phillips Petroleum Co., supra*; *Lamb v. South Unit Jehovah's Witnesses, supra*. In *McGinn v. City of Omaha*, 217 Neb. 579, 352 N.W.2d 545 (1984), this court held that it would be unreasonable to require a municipality to conduct lengthy, individual tree inspections of many thousands of trees on streets and in parks of the municipality charged with negligence in failure to inspect. By analogy to the unreasonable standard requiring inspection of the multithousand municipal trees presented in *McGinn*, we are not prepared to state that a reasonable inspection of Coen's work required a step-by-step pedestrian inspection, through a

work area of some 150 miles, to disclose a virtually invisible stump or remnant of Bell's severed pole. No realistic alternative is suggested by the evidence in this case. Under the circumstances, we agree with the district court that the evidence was insufficient, as a matter of law, to support a finding that Bell's alleged failure to properly inspect Coen's work caused Timothy's injuries. The district court correctly removed from the jury's consideration any issue regarding Bell's inspection of Coen's completed work.

For the first time, on appeal, Foltz raises various issues regarding a nondelegable duty imposed on Bell to obtain a negligence-free, unobstructed right-of-way as the result of Coen's work. As we held in *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984), one employing an independent contractor may be liable for damages resulting from injury caused by the contractor's negligence, when, by rule of law or statute, the duty to guard against the risk is "nondelegable." A nondelegable duty means that an employer of an independent contractor, such as Bell, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. See *Kelly v. Diesel Constr., Morse, Inc.*, 35 N.Y.2d 1, 315 N.E.2d 751, 358 N.Y.S.2d 685 (1974). As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another. See *Atlantic Coast Dev. v. Napoleon Steel*, 385 So. 2d 676 (Fla. App. 1980). One on whom a nondelegable duty is enjoined may not, by employing an independent contractor, escape vicarious responsibility and liability for proper performance of that nondelegable duty. See *Mortgage Guarantee Ins. Corp. v. Stewart*, 427 So. 2d 776 (Fla. App. 1983). See, also, Restatement (Second) of Torts, Introductory Note for §§ 416 to 429 (1965). While Coen's negligence may have been imputed to Bell under some aspect of vicarious liability resulting from the relationship between employer and independent contractor, the jury found in favor of Coen, that is, determined there was no negligence on the part of Coen. Because there is no error requiring retrial of Foltz' claim against Coen, Foltz cannot

recover against Bell on any theory of vicarious liability based on negligence asserted against Coen. Exoneration of an independent contractor from a charge of negligence also exonerates the independent contractor's employer from vicarious liability dependent on that contractor's negligence. See, *Stoutimore v. Santa Fe Ry. Co.*, 338 Mo. 463, 92 S.W.2d 658 (1936); *Borden v. Phillips Petroleum Co.*, 541 S.W.2d 53 (Mo. App. 1976). The error-free verdict exonerating Coen entitled Bell to be exonerated from vicarious liability, for out of nothing comes nothing. See *Lynch v. Hill*, 443 S.W.2d 812 (Mo. 1969). The foundation of Foltz' action against Bell is still negligence on the part of Coen. See Prosser and Keeton on the Law of Torts, *Imputed Negligence* § 69 (5th ed. 1984).

We dispose of Foltz' appeal on the basis of his theory presented by the pleadings on which the case was tried in the district court. See, *Ingerslew v. Bartholomew*, 216 Neb. 836, 346 N.W.2d 258 (1984); *Armstrong v. Hartford Life Ins. Co.*, 219 Neb. 128, 361 N.W.2d 511 (1985). Foltz tried his case on the theory that Coen had negligently performed work in the contracted project, namely, that Coen had cut Bell's pole but negligently failed to remove or warn about such severed pole, and that Bell was independently negligent in failing to properly inspect Coen's work. The court properly submitted Coen's negligence to the jury and properly removed consideration of any question concerning Bell's negligence regarding a failure to inspect.

AFFIRMED.