GENE GERDES, APPELLANT, V.
MELVIN KLINDT ET AL., APPELLEES.
570 N.W. 2d 336

Filed October 31, 1997. No. S-96-252.

Jerald L. Ostdiek, of Nichols, Douglas, Kelly, and Meade, P.C., for appellant.

Lori A. Zeilinger for appellee Marvin Stumpf.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

Gene Gerdes, the garnishor, filed a garnishment action to determine the liability of Marvin Stumpf, the garnishee. The trial court sustained Stumpf's motion for summary judgment, and Gerdes now appeals.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue of material fact or as to the ultimate inferences to be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *D.K. Buskirk & Sons v. State*, 252 Neb. 84, 560 N.W.2d 462 (1997).

On appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Brown v. American Tel. & Tel. Co.*, 252 Neb. 95, 560 N.W.2d 482 (1997).

## FACTS

Gerdes, a rancher and farmer in Box Butte County, entered into a contract with Melvin Klindt, Klindt's Inc., to sell Klindt 5,000 pounds of amaranth seed for $22,500. Under the terms of the contract, Gerdes delivered the seed to Stumpf in July 1992. Gerdes received a check for the seed from Klindt which was returned as insufficient. Gerdes then filed suit against Klindt and obtained a judgment in the amount of $30,550.

Gerdes subsequently served Stumpf with a summons and order of garnishment and interrogatories. Stumpf answered the interrogatories by denying that he had any property belonging to Klindt or credits from moneys owing Klindt, whether due or not. Gerdes then filed an application in the district court for Box Butte County to determine the liability of Stumpf. In the application, Gerdes asserted that Klindt purchased amaranth seed on account from him and that Klindt subsequently bailed the seed to Stumpf to cultivate and harvest. The application alleged that at the time of the filing of the application, Stumpf still held crops and other property belonging to Klindt. The case was transferred to the district court for Perkins County, where both Gerdes and Stumpf moved for summary judgment, alleging there was no dispute as to any material fact and that they were entitled to judgment as a matter of law.

The parties offered the deposition testimony of Stumpf in support of their respective motions. Stumpf testified that he had an oral agreement with Klindt wherein Klindt would provide Stumpf with amaranth seed and Stumpf would grow and harvest it. After harvesting, Stumpf would then sell Klindt the amaranth seed for $1 per pound, which was estimated by Stumpf to be anywhere from 10 to 50 cents above the market price. Stumpf indicated that prior to this agreement with Klindt, he primarily grew wheat and had to "sacrifice quite a few acres" in order to grow the amaranth for Klindt.

Stumpf testified that he planted almost all of the seed, having to plant it three or four times. As of December 31, 1992, Stumpf had 10 to 15 bags of the seed remaining. Each bag weighed 50 pounds, and therefore, 500 to 750 pounds of seed remained after planting. Stumpf opined that this seed was worth at least $2 per pound.

Between October and November 1992, Stumpf harvested the amaranth, which totaled approximately 10,000 bushels, or 600,000 pounds. Klindt did not purchase the amaranth, and over the next "couple of years," Stumpf sold it to various entities, presumably at its market price. Stumpf stated that as of December 31, at least half, if not more, of the crop harvested was still in the grain bins. Although Stumpf stated that he sold some of the amaranth before December 31, he could not say if the proceeds from the sales were still in his bank accounts as of that date.

Upon being questioned as to the ownership of the seed and the resultant crop, the following discussion took place:

Q At the time that the seed was delivered to you on July 2d of '92, did you consider that seed to be yours?

A Yes.

Q What were you going to pay for it at that time?

A Wasn't going to pay anything.

Q What were you going to do in agreement for receiving the seed at that time?

A I was going to grow some amaranth.

Q What else were you going to do?

A Nothing. I was just going to grow some amaranth with that seed.

Q Were you going to sell it to Klindt if he wanted to purchase it?

A Yes.

Q So at that time on July 2d of '92 whose did you consider the seed to be?

A When I went and got it whose seed did I consider it to be?

Q Yes.

A Well, it was mine after I picked it up, but probably legally I probably figured it was Klindt's.

Q Lately?

A You said July 2d of '92 when I thought about that.

Q Right. And then you said lately you consider it to be Klindt's?

MR. ZELINGER: He said legally.

Q (By Mr. Ostdiek) Legally? Oh, okay. I'm sorry. Could you restate what you said?

A Well, I probably didn't think about it very much. He was furnishing the seed, and it didn't matter to me who owned it necessarily.

Q All right.

A He was furnishing the seed for me to grow amaranth.

Q And then you said legally —

A I said legally — I'm thinking back three years what was on my mind trying to answer your question. I'm thinking I probably didn't ask myself that. First I said I probably considered it mine, and then if somebody were to ask me, I probably would have said that legally it was Klindt's.

Q So at this point you believe that it was Klindt's seed in July of '92?

A Now I'll say it was Klindt's, yeah, because of what's happened.

Q And then in December of '92 was it Klindt's?

A December of '92?

Q December 31 of '92?

A I'll say it was Klindt's, yes.

Q The seed that was produced — I mean, the seed that you hadn't planted?

A Was Klindt's, yes.

Q All right. And then the amaranth that were in the bins, is it a fair statement to say that Klindt could have purchased that at that time?

A He could have purchased that.

Q Was that Klindt's at that time?

A No. It was mine.

. . . .

Q All right. So it's your testimony now that at the time you planted it, did that crop become — or did the — yeah, the crop become yours?

A The crop was mine.

. . . .

Q All right. Have you paid Klindt anything for the seed as of today?

A No, I have not.

Q Do you believe that you owe Klindt anything as of today?

A I do not owe Klindt anything as of today.

Q How about after December 31 of '92, did you owe him anything?

A I did not owe him anything then either.

In addition to his deposition testimony, Stumpf offered his affidavit in support of his motion for summary judgment. This affidavit stated that the oral agreement with Klindt provided that Stumpf would give Klindt the first opportunity to purchase the amaranth crop for the agreed price of $1 per pound.

Gerdes also offered his affidavits in support of his motion for summary judgment. In one of two affidavits offered, Gerdes asserted that he had discussions with Klindt and Stumpf concerning the contractual arrangements in question and that under the terms of the contract, Klindt did not have the first opportunity to purchase the seed, but, rather, was obligated to purchase the seed once harvested. Gerdes further stated that the price of $1 per pound as indicated by Stumpf was "totally unreasonable and fictitious" because it was well over the market value of amaranth at the time. Gerdes explained that the market value at the time was approximately 35 to 40 cents per pound for commercial amaranth and 55 to 70 cents per pound for organic amaranth.

The court granted summary judgment to Stumpf, explaining that taking the evidence in the light most favorable to Gerdes, the evidence showed that at no time did Stumpf ever agree to pay Gerdes for the seed, nor did Stumpf guarantee payment by Klindt, and concluded the following:

> At most, Klindt had an oral contract with Stumpf to purchase all of the amaranth seed which Stumpf was going to raise and harvest during 1992. Klindt breached this oral contract, and Stumpf sold the seed on the open market to mitigate his damages, which Stumpf clearly had a legal right to do.

> Each party, Mr. Gerdes and Mr. Stumpf, have sustained a loss in their dealings with Melvin Klindt. However, neither Gerdes nor Stumpf have any causes of action against each other to reduce the amount of that loss.

Gerdes appealed the order granting summary judgment, and the case was transferred to this court's docket on our own motion.

## ASSIGNMENTS OF ERROR

Gerdes asserts that the trial court erred in (1) holding that Stumpf did not have property belonging to the judgment debtor as of the date he was served with interrogatories; (2) holding that Stumpf did not have credits or moneys owing the judgment debtor, whether due or not, as of the date he was served with interrogatories; (3) sustaining Stumpf's motion for summary judgment; (4) overruling Gerdes' motion for summary judgment; and (5) holding that Stumpf correctly answered the garnishment interrogatories.

## ANALYSIS

Garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy. Being in derogation of common law, garnishment statutes are strictly construed and demand compliance with all prerequisites before any remedy is available under such statutes. *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996).

Pursuant to Neb. Rev. Stat. § 25-1030.02 (Reissue 1995), the garnishee shall be liable to the plaintiff who has recovered a final judgment against the defendant if the garnishee was (1) indebted to the defendant, or (2) had any property or credits of the defendant, in his possession or under his control at the time of being served with the notice of garnishment. Thus, the garnishee is not liable unless the defendant had a right of action against him for a legal demand due or to become due. See *Chicago, B. & Q. R. Co. v. Van Cleave*, 52 Neb. 67, 71 N.W. 971 (1897).

In an action to determine the liability of the garnishee, the plaintiff has the burden to establish why the garnishee was liable to the defendant at the time notice of garnishment was served. See, *Torrison v. Overman, supra*; § 25-1030.02. The plaintiff is required to frame the issues in the garnishment proceedings and does so through the application to determine liability. See, *Torrison v. Overman, supra*; *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985).

Gerdes' application alleged that the judgment debtors, Klindt and Klindt's, Inc., purchased amaranth seed on account from Gerdes and that they subsequently bailed the seed to Stumpf to cultivate and harvest and that Stumpf still holds crops and other property of Klindt and Klindt's, Inc. Stumpf's answer to interrogatories denied he had any property belonging to Klindt or credits from moneys owing Klindt. In a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings for disposition of the liability issue. *Torrison v. Overman, supra.* An answer to interrogatories which states that a garnishee has no property, money, or credit due and owing to the judgment debtor acts as a denial of all issues presented by the application to determine garnishee liability filed by the garnishor. *Id.*

Gerdes' brief, in contrast to his application, does not discuss whether Klindt or Stumpf had a bailment arrangement. He asserts, after citing a fraudulent transfer case, *Ternes v. Watke,* 134 Neb. 798, 279 N.W. 718 (1938), that Stumpf held property belonging to Klindt, pointing out that Stumpf admitted that he believed the seed was Klindt's and asserting that Stumpf had deposited proceeds in bank accounts at that time from approximately 2,500 bushels of amaranth. In addition, Gerdes argues that Stumpf owed money to Klindt under a quasi-contract/unjust enrichment theory because it was undisputed that Stumpf received 5,000 pounds of amaranth seed from Gerdes, paid no one for the seed, and harvested approximately 10,000 bushels from the seed.

However, Gerdes' application does not allege unjust enrichment or other quasi-contract theories. Rather, it alleges only that Klindt bailed the seed to Stumpf to cultivate and harvest. Therefore, we consider only the issue of bailment.

In our review of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted and give such party the benefit of all reasonable inferences deducible from the evidence. *Brown v. American Tel. & Tel. Co.,* 252 Neb. 95, 560 N.W.2d 482 (1997). We therefore consider whether the evidence viewed in a light most favorable to Gerdes could support a finding that Stumpf was the bailee of certain property belonging to Klindt at the time the summons in garnishment was served.

In *Mimick v. Beatrice Foods Co.*, 167 Neb. 470, 93 N.W.2d 627 (1958), we defined the term "bailment" as the delivery of personal property for some particular purpose or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it or otherwise dealt with according to that person's directions or kept until reclaimed, as the case may be. In *Yost v. State*, 149 Neb. 584, 31 N.W.2d 538 (1948), we explained that the term "bailment" may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished.

Generally, contracts under which seed is furnished for the raising of crops for compensation based on the result produced are held to constitute a bailment. 8 Am. Jur. 2d *Bailments* § 38 (1980). However, in such cases, the contract in some manner expressly provides that title to the seed and resultant crop remain in the person furnishing the seed. Additionally, the contract often specifies that the money paid for the crop is solely compensation for the grower's services.

In cases where the contract does not in some manner expressly reserve title to the seed and the resultant crop, courts have held that the contract did not create a bailment relationship. Instead, such contracts are determined to be executory contracts for a future sale. In *Schoonover v. Igleheart*, 163 Kan. 689, 186 P.2d 109 (1947), a corporation entered into a contract with a farmer wherein the farmer agreed to grow waxy sorghum on 180 acres of land from seed furnished free by the corporation. The farmer agreed to harvest and deliver the crop for sale, and the corporation agreed to buy the entire crop, grading No. 2 or better at a premium of 30 cents above the market price. There was no reservation in the contract of title in the corporation of either the seed or the crop. As a result, the court rejected the contention that the contract created a bailment relationship. In holding that the contract was, instead, an executory contract for future sale, the court noted that in every case wherein the transaction was held to be a bailment, the contract specifically provided that the title to the seed and the crop was to remain in the

party furnishing the seed, and that it was equally clear that the grower was simply performing a service for which he was to be compensated.

In the present case, there was an oral contract between Klindt and Stumpf. Where evidence as to the terms of an oral contract is conflicting, it is for the jury to pass upon the facts and determine the terms of the contract. *Edward Peterson Co. v. Ulysses S. Schlueter Constr. Co.*, 179 Neb. 883, 140 N.W.2d 830 (1966). However, where evidence as to the terms of the oral contract is not conflicting, the meaning of the contract presents a question of law. *Id.* Here, the terms of the contract between Klindt and Stumpf are basically undisputed. The evidence of the contract terms consists almost exclusively of Stumpf's testimony, and there is a dispute only insofar as Gerdes' affidavit asserts that under the contract, Klindt was obligated to purchase the seed and Stumpf was obligated to sell the seed, once harvested. However, this dispute is not material to this case.

The undisputed testimony of Stumpf describes an agreement in which he agreed to grow approximately 10,000 acres of amaranth seed which was provided by Klindt. Although the precise obligation is unclear, Stumpf stated that the parties understood that after harvest, Stumpf would sell and Klindt would purchase the seed at $1 per pound.

Stumpf testified that the crop was his at all times. There was no evidence contradicting Stumpf's statement. Thus, there is no factual dispute presented as to the ownership of the crop, and as a matter of law, Stumpf was not a bailee of the crop, and Gerdes could not garnish the crop or its proceeds.

The remaining issue concerns the 10 to 15 bags of unplanted amaranth seed which Stumpf opined had a value of about $2 per pound. Stumpf testified that he believed the seed he had not planted belonged to Klindt.

In connection with a motion for summary judgment, statements in affidavits as to opinion, belief, or conclusions of law, are of no effect. See *Young v. First United Bank of Bellevue*, 246 Neb. 43, 516 N.W.2d 256 (1994). Likewise, unless the deponent's opinion, belief, or conclusion of law is at issue in the case, such statements made in a deposition are of no effect. Under the facts set forth, Stumpf's statement that he believed

that "legally" the seed belonged to Klindt, is nothing more than a legal conclusion which is of no effect. It does not rise to the level of establishing the terms of the oral contract regarding the ownership of any remaining unplanted seed. In fact, Stumpf clarifies that "I'm thinking back three years what was on my mind trying to answer your question. I'm thinking I probably didn't ask myself that. . . . Now I'll say it was Klindt's, yeah, because of what's happened." Gerdes failed to present any evidence that, under the terms of the contract, Klindt reserved title to the unplanted seed. Therefore, there is no issue of material fact, and Stumpf is entitled to judgment as a matter of law.

We affirm the judgment of the district court.

AFFIRMED.