SPAGHETTI LIMITED PARTNERSHIP, A NEBRASKA LIMITED PARTNERSHIP, APPELLANT, V. GLENN WOLFE, DOING BUSINESS AS WOLFE ANTIQUES, APPELLEE, AND HOCKENBERGS EQUIPMENT & SUPPLY CO., INC., A NEBRASKA CORPORATION, GARNISHEE-APPELLEE.

647 N.W.2d 615

Filed July 19, 2002.   No. S-01-591.

W. Patrick Betterman and Dave J. Skalka, of Law Offices of W. Patrick Betterman, for appellant.

Michael L. Smart, of White, Wulff & Smart, for garnishee-appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Appellant, Spaghetti Limited Partnership (Spaghetti), brought this garnishment action in aid of execution of a judgment pursuant to Neb. Rev. Stat. § 25-1056 (Cum. Supp. 2000). Spaghetti had obtained a $55,879.98 judgment against Glenn Wolfe, doing business as Wolfe Antiques (Wolfe). Believing that Wolfe was performing work for the garnishee-appellee, Hockenbergs Equipment & Supply Co., Inc. (Hockenbergs), Spaghetti requested that the district court issue a garnishment summons upon Hockenbergs. Hockenbergs did not answer the garnishment summons and interrogatories issued by the district court. Spaghetti initiated a hearing to determine Hockenbergs' liability. The district court found that Hockenbergs' failure to answer the garnishment interrogatories was inadvertent and that the garnishee had rebutted the presumption of full indebtedness at the hearing, and ordered that Hockenbergs pay $396 to Spaghetti. Spaghetti now appeals.

## BACKGROUND

On February 23, 2001, the district court entered a judgment in favor of Spaghetti and against Wolfe for the sum of $55,879.98. Under the belief that Wolfe worked for Hockenbergs, Spaghetti requested that the district court issue a garnishment summons upon Hockenbergs for the full amount of the judgment against Wolfe. The district court issued a summons and order of garnishment and interrogatories to Hockenbergs as garnishee on March 7. Hockenbergs received the garnishment summons and interrogatories on March 12. Section 25-1056(1) dictates that Hockenbergs should have answered within 10 days, i.e., by March 22.

On March 27, 2001, Spaghetti filed an application to determine garnishee liability, alleging that Hockenbergs failed to respond to the interrogatories and requesting a hearing on the matter. The district court issued an order finding that Hockenbergs failed to answer the garnishment interrogatories by March 22 and scheduling a hearing for April 24 to determine Hockenbergs' liability.

Hockenbergs received a copy of the order and filed a "Response of Garnishee" on April 11, 2001, claiming that it misplaced the interrogatories "through inadvertence and error" and thus did not answer. Hockenbergs filed an offer to confess judgment in the amount of $395.31. Spaghetti filed a motion to strike Hockenbergs' response, claiming that the response was irrelevant pursuant to Neb. Rev. Stat. § 25-833 (Reissue 1995) or, in the alternative, frivolous pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1995), because Hockenbergs did not comply with the statutory requirements for garnishment proceedings. The district court sustained Spaghetti's motion to strike.

At the April 24, 2001, hearing, the district court received evidence to determine the amount of liability that existed from Hockenbergs to Spaghetti. Thomas Schrack, Jr., president of Hockenbergs, testified that Wolfe was employed by Hockenbergs at one time, but Wolfe had quit by the time of the hearing. Schrack, Jr., testified that his father, Thomas Schrack, Sr., received the garnishment summons several days after Wolfe informed him that he was filing for bankruptcy. When Schrack, Sr., opened the summons and saw "Spaghetti Limited Partnership against Glenn Wolfe" written on the first page, he gave the summons and interrogatories to Wolfe. The Schracks did not see the interrogatories again until they were contacted by Spaghetti's attorney, at which time they retrieved the interrogatories from Wolfe. Schrack, Jr., further testified that after initially receiving the garnishment interrogatories, Hockenbergs issued Wolfe two paychecks in the amounts of $739.50 and $841.74. Schrack, Jr., stated that he represented to Spaghetti's counsel that Hockenbergs was prepared to tender 25 percent of Wolfe's disposable earnings, i.e., $395.31, a figure apparently reached after applying the wage exemption of Neb. Rev. Stat. § 25-1558(1)(a) (Reissue 1995).

The district court found at the hearing that Hockenbergs' failure to answer the interrogatories was inadvertent and due to a misunderstanding and that Hockenbergs' "explanation [was] credible." Pursuant to Hockenbergs' offer to confess judgment, the district court found that Hockenbergs owed Spaghetti $396. The district court entered judgment via written order on May 3, 2001, restating its finding that Hockenbergs' failure to timely answer the garnishment interrogatories was inadvertent and entering judgment in the amount of $396 in favor of Spaghetti and against Hockenbergs.

Spaghetti appeals. We moved this case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

### ASSIGNMENTS OF ERROR

Spaghetti assigns, restated, that the district court erred in (1) determining that the presumption of indebtedness in Neb. Rev. Stat. § 25-1028 (Reissue 1995) is a rebuttable evidentiary presumption, (2) determining that the garnishee's failure to timely answer the garnishment interrogatories was excusable, (3) determining that the garnishee had rebutted the presumption of indebtedness, and (4) applying § 25-1558(1)(a) in entering judgment.

### STANDARD OF REVIEW

■ Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *First Data Corp. v. State*, 263 Neb. 344, 639 N.W.2d 898 (2002).

### ANALYSIS

Garnishment in aid of execution is a legal remedy unknown at common law and strictly governed by statute. See *Gerdes v. Klindt*, 253 Neb. 260, 570 N.W.2d 336 (1997). Generally, in cases where a court enters judgment in favor of a creditor, the judgment

creditor may, as garnishor, request that the court issue a summons of garnishment against any person or business owing money to the judgment debtor. See, Neb. Rev. Stat. § 25-1011 (Reissue 1995); § 25-1056. As garnishee, the person or business owing money to the judgment debtor must answer written interrogatories furnished by the garnishor to establish whether the garnishee holds any property or money belonging to or owed to the judgment debtor. See § 25-1056. Upon establishing through pleadings and trial that the garnishee holds property or credits of the judgment debtor, the garnishee must then pay such amounts to the court in satisfaction of the garnishor's judgment against the judgment debtor, subject to certain statutory exceptions with regard to wages. See, *id.*; Neb. Rev. Stat. §§ 25-1026 to 25-1031.01 (Reissue 1995); § 25-1558.

### PRESUMPTION OF INDEBTEDNESS

Spaghetti assigns, first, that the district court erred in finding that the presumption of indebtedness in § 25-1028 is a rebuttable evidentiary presumption. Section 25-1028 states:

> If the garnishee fails to answer, as required by section 25-1026, he shall be presumed to be indebted to the defendant in the full amount of the claim of plaintiff. Upon notice to the garnishee given within such time and in such manner as the court shall direct, judgment may be entered for such amount as the court may find due from the garnishee.

Spaghetti argues that the word "presumed" in the above statute does not, standing alone, create a rebuttable evidentiary presumption. Spaghetti asserts that because Hockenbergs did not timely respond to the interrogatories or file an appropriate answer, Hockenbergs cannot rebut the presumption of indebtedness in § 25-1028 and that the district court should have taken all the allegations in Spaghetti's pleading to be true and rendered judgment in the sum of $55,879.98 against Hockenbergs.

Garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy. *Gerdes, supra.* Being in derogation of common law, garnishment statutes are strictly construed and demand compliance with all prerequisites before any remedy is available under such statutes. *Id.* Because garnishment is a creature of statute, garnishment proceedings

are necessarily governed by statutory provisions and specifications. Courts may not allow garnishment proceedings to follow any course other than that charted by the Legislature. *Torrison v. Overman,* 250 Neb. 164, 549 N.W.2d 124 (1996).

■ Because § 25-1028 does not indicate whether the presumption of indebtedness is rebuttable, we must resort to statutory interpretation. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *First Data Corp. v. State,* 263 Neb. 344, 639 N.W.2d 898 (2002). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *City of Omaha v. Kum & Go,* 263 Neb. 724, 642 N.W.2d 154 (2002).

■ First, § 25-1028 states that after a garnishee fails to answer, the garnishee "*shall* be presumed to be indebted" to the garnishor. (Emphasis supplied.) As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion. *NC+ Hybrids v. Growers Seed Assn.,* 219 Neb. 296, 363 N.W.2d 362 (1985). Thus, the plain and ordinary meaning of "shall be presumed to be indebted" in § 25-1028 is that a presumption of indebtedness for the full amount of the claim of the plaintiff-garnishor arises when the garnishee fails to answer as required by statute.

■ Second, § 25-1028 states that "judgment *may* be entered for such amount as the court *may* find due from the garnishee." (Emphasis supplied.) Generally, the word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. *State ex rel. Scherer v. Madison Cty. Comrs.,* 247 Neb. 384, 527 N.W.2d 615 (1995). See, also, Neb. Rev. Stat. § 49-802(1) (Reissue 1998) ("[w]hen the word may appears, permissive or discretionary action is presumed"). Thus, § 25-1028 does not trigger automatic liability on the part of the garnishee, but instead, permissively allows the court to move forward in resolving the litigation according to its judgment.

Additionally, the Nebraska rules of evidence support our conclusion that § 25-1028 creates a rebuttable presumption. Neb. Rev. Stat. § 27-301 (Reissue 1995) states that "[i]n all cases not

otherwise provided for by statute or by these rules a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Thus, § 25-1028 places the burden on Hockenbergs to show the nonexistence of the presumed indebtedness—a rebuttable presumption of indebtedness. Because no statute or evidentiary rule provides otherwise, the district court appropriately gave Hockenbergs the opportunity to rebut the presumption of indebtedness.

In construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). It would be absurd to conclude that if a garnishee fails to respond to garnishment interrogatories, an irrebuttable presumption of indebtedness arises—this would potentially saddle an inadvertently unresponsive garnishee with liability far in excess of the actual amount that a garnishor could have received had the garnishee properly answered. Interpreting § 25-1028 to raise a rebuttable presumption of indebtedness serves a dual purpose: it gives the garnishee incentive to answer the interrogatories so as to avoid raising the presumption while allowing the garnishor the benefit of such a presumption should the garnishee fail to answer, yet it provides appropriate due process of law to a garnishee that innocently and inadvertently fails to answer.

We conclude that § 25-1028 creates a rebuttable presumption of indebtedness, and Spaghetti's assignment of error on this ground is without merit.

### FAILURE TO ANSWER GARNISHMENT INTERROGATORIES

Spaghetti assigns, second, that the district court erred in determining that Hockenbergs' failure to answer the garnishment interrogatories was excusable. Spaghetti asserts that the trial court does not have the authority to excuse a failure to timely file answers to interrogatories.

At a hearing or trial on a garnishor's application to determine garnishee liability, the trier of fact (in this case, the district court) is entitled to receive evidence from the garnishee with regard to liability, even if the garnishee has not appropriately

answered the garnishment interrogatories. Neb. Rev. Stat. § 25-1010 (Reissue 1995) provides that upon the filing of an affidavit containing the necessary allegations, the court may direct the clerk of the court to issue a summons and order requiring the garnishee to answer written interrogatories. The garnishee is then required to answer under oath all the interrogatories put to the garnishee. § 25-1026. If the garnishee's answers are not satisfactory to the garnishor, the garnishor may file an application for determination of the garnishee's liability. See *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996). The application for determination of liability and the answers of the garnishee are the pleadings upon which trial of the issue of liability of the garnishee shall be had. § 25-1030. See *Torrison, supra.*

In this case, the district court hearing on Spaghetti's application to determine Hockenbergs' liability constituted the trial of garnishment liability, as prescribed by statute. Section 25-1030.02, in pertinent part, sets forth parameters for the garnishment trial:

> The trial of the determination of the liability of the garnishee shall be conducted the same as in a civil action. If it shall appear upon the trial of the liability of the garnishee that the garnishee was (1) indebted to the defendant, or (2) had any property or credits of the defendant, in his possession or under his control at the time of being served with the notice of garnishment, he shall be liable to the plaintiff, in case judgment is finally recovered by plaintiff against the defendant, to the full amount thereof, or to the amount of such indebtedness or property held by the garnishee.

In a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings for disposition of the liability issue. *Gerdes v. Klindt*, 253 Neb. 260, 570 N.W.2d 336 (1997). Accordingly, the district court in this case did not permit Hockenbergs' "Response of Garnishee" beyond the due date of the interrogatories and sustained Spaghetti's motion to strike. The district court instead allowed the garnishee to present evidence at the hearing on Spaghetti's motion to determine garnishee liability, in keeping with its correct determination that Hockenbergs was

entitled to rebut the presumption of indebtedness arising from its failure to answer the interrogatories.

In *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985), this court determined that a trial court has no authority in garnishment proceedings to permit, notwithstanding Neb. Rev. Stat. § 25-822 (Reissue 1995), a garnishor to file an application to determine liability beyond the 20-day time period provided by statute. Based on this proposition, Spaghetti argues that the court cannot excuse an untimely filing of answers to interrogatories. *NC+ Hybrids* is distinguishable from the instant case, however; it was not necessary to interpret the statute at issue in *NC+ Hybrids*, as the statute unambiguously required that the garnishor file the application for determination of liability within the 20-day statutory period.

We explained our determination in *NC+ Hybrids*, 219 Neb. at 300, 363 N.W.2d at 365, as follows:

> In view of the nature of garnishment demanding an expeditious disposition of proceedings, *it is reasonable that the Nebraska Legislature sought to protect a garnishee from often unnecessary and sometimes oppressive litigation. . . .* To achieve prompt disposition the Legislature has specified a relatively short time for counteraction by a judgment creditor or garnisher in the event of any dissatisfaction with a garnishee's disclosure contained in answers to interrogatories, namely, a written application filed within 20 days . . . .

(Emphasis supplied.)

As emphasized above, an essential element guiding the decision in *NC+ Hybrids, supra*, was the Legislature's intent to procedurally protect the garnishee. In this case, we have already determined that Hockenbergs is entitled to rebut the presumption of indebtedness in § 25-1028. Hockenbergs' failure to answer the interrogatories raised this presumption, but the hearing to determine garnishee liability still provided Hockenbergs with an opportunity to be heard in a prompt and fair proceeding. After receiving notice of Spaghetti's application to determine garnishee liability, Hockenbergs was entitled to present evidence at the trial to rebut the presumption raised by its failure to answer interrogatories.

The procedure in this case conformed to the statutory garnishment scheme set forth by the Legislature. The district court made a factual finding that Hockenbergs' failure to timely answer the interrogatories was inadvertent. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997). The district court did not clearly err in finding Hockenbergs' failure to timely answer the garnishment interrogatories to be excusable at the hearing to determine liability.

Under the circumstances in this case, Hockenbergs cannot be liable to Spaghetti for the full judgment of $55,879.98, despite Spaghetti's assertions. The claim of a judgment creditor garnishor against a garnishee can rise no higher than the claim of the garnishor's judgment debtor against the garnishee. *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995). Although Hockenbergs' initial failure to answer the interrogatories may have potentially subjected it to a judgment in the full amount of Spaghetti's claim against Wolfe, Hockenbergs' appearance at the hearing to determine liability defeated this claim. Thus, the most Spaghetti can garnish is the amount owed to Wolfe by Hockenbergs at the time of the service of summons in garnishment. See *id.*

### REBUTTING PRESUMPTION OF INDEBTEDNESS

Third, Spaghetti assigns that the district court erred in finding that Hockenbergs rebutted the presumption of indebtedness. With regard to factual issues, the findings of a garnishment hearing judge will not be set aside on appeal unless clearly wrong. See *Farr, supra.*

Spaghetti asserts that Hockenbergs did not present evidence to rebut the presumption of its indebtedness for the full amount of Spaghetti's judgment against Wolfe. At the hearing to determine liability, Thomas Schrack, Jr., testified as to the amounts of Wolfe's paychecks after receipt of the garnishment summons and stated that Hockenbergs did not have any other funds subject to garnishment. Spaghetti argues that this testimony was vague and speculative to the point that it failed to rebut the presumption that

Hockenbergs owes the full amount of the judgment against Wolfe. The court, however, did not receive any evidence contrary to Schrack, Jr.'s testimony. We conclude that the evidence submitted was sufficient to rebut the presumption of indebtedness for the full amount demanded by Spaghetti. Spaghetti's contention to the contrary is without merit.

APPLICATION OF § 25-1558(1)(a) IN ENTERING JUDGMENT

Finally, Spaghetti assigns that the district court erred in applying § 25-1558(1)(a), the wage protection statute, to the sum it found due from Hockenbergs. Hockenbergs argues that the wage exemption applies and that contrary to Spaghetti's construction of the law, the judgment creditor's debts do not become the debt of the garnishee merely because a garnishment interrogatory has been served.

Section 25-1558 states, in pertinent part:

(1) Except as provided in subsection (2) of this section, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment shall not exceed the lesser of the following amounts:

(a) Twenty-five percent of his disposable earnings for that week;

. . . .

(4) For the purposes of this section:

. . . .

(b) Disposable earnings shall mean that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

Spaghetti argues that the trial court erroneously reached the sum it found due from Hockenbergs by applying this statute, because Hockenbergs had already paid the wages to Wolfe and § 25-1558 is intended to protect the judgment debtor, not the garnishee. Spaghetti urges that it is entitled to the full amount of the wages Hockenbergs owed Wolfe as of the date the garnishment summons were served. A garnishee's liability is to be determined as of the time of the service of the summons in garnishment. *Davis Erection Co. v. Jorgensen*, 248 Neb. 297, 534 N.W.2d 746 (1995). According to testimony by Schrack, Jr., Hockenbergs

paid Wolfe two separate paychecks in the amounts of $739.50 and $841.74, respectively, following the service of the garnishment summons; the record is not clear as to what amount Hockenbergs actually owed Wolfe at the time Hockenbergs received the garnishment summons on March 12, 2001.

In the instant case, we encounter a situation in which Hockenbergs paid Wolfe after the service of the garnishment summons and interrogatories, because Hockenbergs did not know that Wolfe's wages had been garnished. Spaghetti asserts that the protection § 25-1558 provides to debtor wage earners is personal to the debtor and cannot be utilized for the garnishee's benefit. Under Spaghetti's argument, the exemption would not apply to Wolfe's wages, as Wolfe is already in possession of the garnished wages, and the wage exemption is in place for the protection of the debtor, not the garnishee. We agree.

The purpose of the wage exemption defense in garnishment proceedings is to protect the judgment debtor from garnishment of his or her wages; it may not be raised by the garnishee against the judgment debtor. See, e.g., *Jefferson Bank v. J. Roy Morris*, 432 Pa. Super. 546, 639 A.2d 474 (1994). A reasonable reading of § 25-1558 leads us to conclude that the wage exemption provisions are intended to protect the debtor, not the garnishee—i.e., the Legislature intended to protect judgment debtors and their families from destitution and/or bankruptcy in the event of wage garnishment. In the instant case, Hockenbergs disbursed wages to Wolfe after the garnishment summons had been served (unbeknownst to Hockenbergs); thus, Hockenbergs should not be entitled to utilize an exemption in place for the benefit of Wolfe, when Wolfe himself will receive no benefit from the exemption.

Other jurisdictions have similarly interpreted their wage exemption statutes to achieve the purpose of protecting the debtor. See, e.g., *In re Marriage of Eklofe*, 586 N.W.2d 357 (Iowa 1998); *Wilmington Trust Co. v. Barron*, 470 A.2d 257 (Del. Super. 1983); *Cadle Co. v. G & G Associates*, 757 So. 2d 1278 (Fla. App. 2000).

Hockenbergs cannot claim a wage exemption pursuant to § 25-1558(1)(a) on behalf of Wolfe, because Hockenbergs has already paid Wolfe the wages in question. The district court, therefore, erred in awarding Spaghetti only $396. The proper

amount due to Spaghetti is the amount of wages that Hockenbergs owed Wolfe at the time of the garnishment summons, without exempting the amount that would have been eligible had Hockenbergs still held the amount that it owed Wolfe. The record indicates that the amount owed is no less than $739.50 but not more than $1,581.24. Because we cannot ascertain the exact amount from the record before us, however, we must remand this cause to the district court solely for a determination of the amount of wages Hockenbergs owed Wolfe as of March 12, 2001—the date that the garnishment summons and interrogatories were served on Hockenbergs.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court insofar as it determined that the presumption in § 25-1028 is a rebuttable presumption, that Hockenbergs' failure to answer the garnishment interrogatories was excusable, and that Hockenbergs did, in fact, rebut the presumption.

We reverse the district court's judgment, however, insofar as it applied § 25-1558(1)(a) to the amount Hockenbergs owes Spaghetti. Therefore, we remand this cause to the district court to determine the amount owed by Hockenbergs to Wolfe on the date that the garnishment summons and interrogatories were served on Hockenbergs; that amount shall be the amount to be garnished by Spaghetti from Hockenbergs.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.