745 N.W.2d 884 (2008)
275 Neb. 220
Larry E. PETERSEN and Joyce A. Petersen, husband and wife, Appellees
v.
CENTRAL PARK PROPERTIES, INC., et al., Appellees, and
Realty Linc, Inc., doing business as ERA Realty Center, Garnishee-Appellant.
No. S-06-1289.
Supreme Court of Nebraska.
March 7, 2008.
*885 Todd V. Elsbernd, of Bradley, Elsbernd, Emerton, Andersen & Kneale, P.C., Grand Island, for appellant.
Mark Porto, of Shamberg, Wolf, McDermott & Depue, Grand Island, for appellee Jennifer A. Bauer.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
Jennifer A. Bauer filed an application to determine the liability of the garnishee, Realty Linc, Inc., doing business as ERA Realty Center. Bauer sought to collect on a judgment entered against E.W. Skala. The Hall County District Court determined that Gary Thompson, president of Realty Linc, had not accurately answered *886 garnishment interrogatories. The court entered judgment against Realty Linc in the amount of $19,137 plus costs. Realty Linc appeals.

SCOPE OF REVIEW
Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. Spaghetti Ltd. Partnership v. Wolfe, 264 Neb. 365, 647 N.W.2d 615 (2002).

FACTS
On May 13, 2004, the Merrick County Court entered a judgment on a promissory note for Larry E. Petersen and Joyce A. Petersen against four parties: Central Park Properties, Inc.; Roland E. Reynolds; Bauer; and Skala. The judgment with interest totaled $30,291.40. Bauer filed a cross-claim against Reynolds and Skala, and the court entered judgment for Bauer. Reynolds and Skala were ordered to reimburse Bauer for any payments made by her against the judgment.
In order to collect on the cross-claim, Bauer sought to garnish wages from Skala, who was a real estate agent with Realty Linc. On September 8, 2006, a "Summons and Order of Garnishment in Aid of Execution" was filed in Hall County District Court naming Realty Linc as the garnishee. The judgment debtor was identified as Skala, and the judgment creditor was identified as Bauer. The summons informed Realty Linc that it was required by law to answer the attached interrogatories and to file them within 10 days. The summons indicated that Realty Linc was obligated to hold any wages due to Skala to the extent of the amount due and to pay to Skala the disposable earnings not subject to garnishment, as determined according to the interrogatories and instructions. If Realty Linc did not answer the interrogatories, it would be presumed to owe Skala the full amount of Bauer's claim. The amount due on the judgment was listed as $33,868.25.
Interrogatories were answered by Thompson, as president of Realty Linc. The first question on the interrogatory form asked if Skala, the judgment debtor, was currently in Thompson's employ. Thompson's response was "Yes." Thompson responded "No" to questions that asked if he owed Skala any money for wages on the date and time Thompson was served with the garnishment and if Realty Linc would owe earnings to Skala within the next 60 days. The interrogatories asked how often Skala was paid, and Thompson wrote in "Commission." In response to a question that asked for the judgment debtor's earnings for the pay period, Thompson wrote "Commission." The interrogatories then asked for the amount required by law to be deducted from the judgment debtor's earnings, for the judgment debtor's disposable earnings for the pay period, and for the portion of the judgment debtor's disposable earnings that were subject to the garnishment order. Thompson indicated "N/A" to each of the questions. The form directed Realty Linc to calculate the amount of disposable earnings by referring to the "Employer's Instruction Sheet." Such an instruction sheet is not included in the record before us.
Thompson replied "No" to additional questions asking whether any of Skala's earnings were currently withheld pursuant to any other order, such as a withholding order or a continuing lien. The form stated, "Based upon the above answers, the amount of wages being withheld on this garnishment is: ____." Thompson did not enter any amount. The interrogatories also asked if Realty Linc had any *887 property belonging to Skala, or credits or monies owed to Skala, whether due or not, other than the earnings described previously. Thompson responded, "No." If the answer was "Yes," the form then asks the garnishee to specify whether it was property or to provide the "[a]mount of money or credits you owe the judgment debtor, other than earnings." It also asked for the "[d]ate the money or credits were due, or will be due."
After the interrogatories were filed, Bauer filed an application against Realty Linc, the garnishee, seeking to determine liability. She alleged that the answers and disclosures given by Thompson were not satisfactory, were wholly inadequate, and failed to provide the information requested in the garnishment. She sought judgment against Realty Linc in the sum of $33,868.25.
Thompson was ordered to appear in court to respond to Bauer's application. At a hearing on September 29, 2006, Thompson stated that he had completed and signed the interrogatories. He stated that Skala was an associate broker in Realty Linc's office in Grand Island, Nebraska, and, as such, Thompson considered Skala an independent contractor, not an employee of the corporation. When asked if Skala was in Thompson's employ, he stated, "[I]t depends on how you define, `Employ.'" Thompson said he indicated "Yes" on the interrogatory asking whether Skala was in his employ without further explanation because there "was no opportunity to answer any other way."
Thompson stated that Skala was paid on commission by Realty Linc and that at the time Thompson completed the interrogatories, he was not aware that Skala was due to receive any commissions in the next 60 days. Thompson said he asked the company's comptroller if any funds had been received as a result of any real estate closings, and Thompson was told no funds had been received. Thompson admitted that he would have owed earnings to Skala if there had been any real estate closings in the 60 days following completion of the interrogatories. At the time he answered the interrogatories, Thompson knew Skala had closings scheduled within the next 60 days, but he said he did not know that the company would owe Skala any money in that time period. Thompson had no specific reason to believe that any of the scheduled closings would not take place.
Thompson said that on average, Skala had received a commission at least monthly. Thompson stated that he completed the interrogatories to the best of his ability given the way the questions were drafted.
Alvin Avery, managing broker for the Woods Brothers Realty office in Grand Island, testified that for two properties that closed in the 3-week period prior to the hearing and in which Woods Brothers Realty was involved, Skala was the selling agent or listing agent. For those sales, Skala was entitled to commissions of approximately $3,357. Avery also provided information that Skala was involved in six additional closings between September 7 and 22, 2006. Avery said the customary fee arrangement in real estate allows the listing company to retain 60 percent of the commission and the selling company to receive 40 percent of the commission. He stated that the total of commissions due to Realty Linc for the eight properties sold in the 3-week period after September 7 equaled approximately $19,000.
The district court entered an order finding that based on testimony and evidence, Skala had generated commissions totaling $19,137 within 21 days of the date the interrogatories were answered by Thompson. It determined that Thompson knew or should have known that Skala had commissions to be paid within the 60 days *888 following the completion of the interrogatories, in which Thompson denied that he owed Skala money. The court found that the answers given by Thompson were not accurate because Thompson owed Skala commissions at the time Thompson answered the interrogatories. The court entered judgment in favor of Bauer and against Realty Linc in the sum of $19,137 plus costs.

ASSIGNMENTS OF ERROR
Realty Linc assigns that the district court erred (1) in determining that Realty Linc, its agents, and its employees knew or should have known that Skala had commissions to be paid within 60 days following the completion of interrogatories from Bauer; (2) in finding that commissions/earnings were owed to Skala at the time Thompson answered the interrogatories on behalf of Realty Linc; (3) in finding that the answers given by Thompson were not answered in full and good faith; and (4) in ordering judgment in favor of Bauer and against Realty Linc in the sum of $19,137 plus costs of the action.

ANALYSIS
The issue here is whether the district court erred in finding that Thompson, on behalf of Realty Linc, did not accurately answer the interrogatories. Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of a garnishment hearing judge have the effect of findings by a jury and, on appeal, will not be set aside unless clearly wrong. Spaghetti Ltd. Partnership v. Wolfe, 264 Neb. 365, 647 N.W.2d 615 (2002).
We begin by briefly reviewing the garnishment procedure. When a judgment has been entered by a court, the judgment creditor may file an affidavit in the office of the clerk of the court where the judgment has been entered, stating that the judgment creditor has reason to believe that a person, partnership, limited liability company, or corporation has property of and is indebted to the judgment debtor. See Neb.Rev.Stat. § 25-1056(1) (Cum. Supp. 2006). The clerk then issues a summons setting forth the amount due on the judgment, interest, and costs as shown in the affidavit and requiring the garnishee to answer written interrogatories to be furnished by the judgment creditor. Id. A copy of the summons and order of garnishment must be sent by the judgment creditor to the judgment debtor by certified mail. Neb.Rev.Stat. § 25-1011(2) (Reissue 1995). The garnishee must answer the summons within 10 days from the date of service. § 25-1056(1).
When wages are involved, the garnishee must pay to the employee/judgment debtor all disposable earnings exempted from garnishment by statute. Id. Any disposable earnings that remain after such payment shall be retained by the garnishee until further order of the court. Id.
The judgment debtor may request a hearing if he or she believes the garnishment should not be allowed either because the funds sought are exempt or because the amount is not owed on the judgment. See § 25-1011(4)(c). Such a hearing must be held within 10 days of the request. § 25-1011(5).
The judgment creditor may apply to the court for an order transferring the nonexempt earnings withheld by the garnishee to the court for delivery to the judgment creditor if it appears from the garnishee's answer (1) that the judgment debtor was an employee of the garnishee, (2) that the garnishee otherwise owed earnings to the judgment debtor when the garnishment order was served, or (3) that earnings would be owed within 60 days and there is no written objection to the order or the *889 answer of the garnishee filed. See § 25-1056(2).
State law also provides that the garnishee shall answer under oath all interrogatories concerning property or credits of the judgment debtor and that the garnishee shall disclose the amount owed to the judgment debtor. Neb.Rev.Stat. § 25-1026 (Reissue 1995). If the garnishee fails to answer the interrogatories, it is presumed that the garnishee is indebted to the judgment debtor in the full amount of the claim of the judgment creditor. Neb.Rev.Stat. § 25-1028 (Reissue 1995).
If the garnishee's answers to interrogatories are not satisfactory to the judgment creditor or if the garnishee does not comply with an order of the court by paying the money owed into the court, the judgment creditor may file an application for determination of the liability of the garnishee. See Neb.Rev.Stat. § 25-1030 (Reissue 1995). The application may controvert the garnishee's answer, or it may allege facts to show the existence of indebtedness of the garnishee to the judgment debtor. Id. The garnishee's answer and the application for determination of the liability of the garnishee constitute the pleadings upon which trial as to the garnishee's liability shall be held. Id. Such a trial is conducted as a civil action. Neb.Rev.Stat. § 25-1030.02 (Reissue 1995).
If it is demonstrated at the trial of the garnishee's liability that the garnishee was indebted to the judgment debtor or had any property or credits of the judgment debtor in the garnishee's possession or under his control at the time of being served with the notice of garnishment, the garnishee is liable to the judgment creditor for the full amount of the judgment or for the amount of such indebtedness or property held by the garnishee. See id. The judgment creditor may then have a judgment against the garnishee for the amount of money due from the garnishee to the judgment debtor in the original action. Id.
In the case at bar, Bauer became the judgment creditor when she obtained a judgment against Skala, the judgment debtor, in the original action. Bauer sought to garnish Skala's wages from his employer, Realty Linc, the garnishee, by filing the summons for garnishment in aid of execution. Bauer claimed that Thompson, as Realty Linc's representative, had not adequately answered the interrogatories, and she filed an application against Realty Linc as garnishee to determine liability. A hearing was held to determine whether Thompson had satisfactorily responded to the interrogatories.
Thompson testified at the hearing that Skala was an independent contractor who received commissions when real estate closings occurred. Although Thompson indicated in the interrogatories that he did not owe Skala any money for wages and that he would not owe Skala any earnings within the next 60 days, Thompson admitted at the hearing that he knew there were closings scheduled within the next 60 days for properties either listed or sold by Skala. Even though Skala had on average received a commission at least monthly in the past, Thompson claimed he did not know that the company would owe Skala any money in the next 60 days. Avery, a real estate broker for another company in Grand Island, testified that Skala was involved in eight closings between September 7 and 22, 2006, with total commissions of approximately $19,000.
The district court determined that Thompson knew or should have known that Skala had commissions that would be paid within the 60 days following service of the interrogatories and that, therefore, Thompson's answers to the interrogatories *890 were not accurate. The court entered judgment in favor of Bauer and against Realty Linc.
Nebraska law requires the garnishee to answer written interrogatories furnished by the judgment creditor. Upon establishing through pleadings and trial that the garnishee holds property or credits of the judgment debtor, the garnishee must then pay such amounts to the court in satisfaction of the judgment against the judgment debtor, subject to certain statutory exceptions with regard to wages. Spaghetti Ltd. Partnership v. Wolfe, 264 Neb. 365, 647 N.W.2d 615 (2002). Bauer established at the hearing that Realty Linc held commissions due to Skala, which in turn could be used to satisfy his debt to Bauer.
At the hearing, Thompson equivocated about his answers to the interrogatories. He admitted that Skala was in his employ. But then Thompson sought to qualify the definition of "employ." He stated that he did not attempt to further explain the situation because there was no additional space provided on the form. He did not attempt to provide any explanation to suggest that Skala's compensation was solely in the form of commission and was based on pending real estate closings. As a general rule, a garnishee owes a duty to act in good faith and answer fully and truthfully all proper interrogatories presented to him. See Western Smelting & Refining Co. v. First Nat. Bank, 150 Neb. 477, 35 N.W.2d 116 (1948). The garnishee is expected to, in some appropriate manner, properly disclose all relevant facts within his knowledge at the time of submitting an answer concerning his indebtedness to the judgment debtor or concerning money or property of the judgment debtor then in his possession. Id.
The garnishment forms are uniform and are promulgated by this court. § 25-1011(3). The employers' instructions that accompany garnishment forms specifically state: "The term `earnings' means compensation for personal services owing, whether due or not, to the judgment debtor at the time of service of the Summons and Interrogatories, whether denominated as wages, salary, commissions, bonus, or otherwise . . ." (Emphasis supplied.) Thompson knew or should have known that Skala would be due commissions for real estate sales within the next 60 days. The district court did not err in finding that commissions were owed to Skala at the time the interrogatories were answered. There was competent evidence to support the district court's finding that Skala had generated commissions totaling $19,137 within 21 days of the date the interrogatories were answered by Thompson and that Thompson's answers were not accurate because he owed Skala commissions at the time Thompson answered the interrogatories.
Realty Linc also appears to object to the district court's determination that Realty Linc was liable to Bauer in the amount of $19,137, rather than solely the amount of commissions earned by Skala. Section 25-1028 provides that if the garnishee fails to answer, it is presumed that the garnishee is indebted in the full amount of the judgment creditor's claim. This is a rebuttable presumption. See Spaghetti Ltd. Partnership v. Wolfe, 264 Neb. 365, 647 N.W.2d 615 (2002). In this case, although Realty Linc answered the interrogatories, the court found that the answers were not accurate. Though this failure to accurately answer the interrogatories may have potentially subjected Realty Linc to a judgment in the full amount of $33,868.25, Realty Linc's appearance at the hearing to determine liability defeated *891 this claim. See id. Thus, the most Bauer could garnish is the amount Realty Linc owed Skala, as shown by the pleadings and evidence. See id. The only evidence as to the value of the closings that took place within the 60-day period after the interrogatories were issued came from Avery, the broker of another real estate firm. Avery stated it was customary for agents to split the commissions. However, Realty Linc did not offer any evidence concerning the division of commissions. Avery testified that Skala was involved in eight closings between September 7 and 22, 2006, with total commissions of approximately $19,000. The district court entered judgment against Realty Linc for $19,137 plus costs. The court's findings have the effect of a jury's findings and will not be set aside on appeal unless clearly wrong. See id.

CONCLUSION
There is no evidence that the judgment in this case was clearly wrong. The judgment of the district court is affirmed.
AFFIRMED.