776 N.W.2d 201 (2009)
278 Neb. 989
Richard D. MYERS, Trustee of the Floors & More, Inc., chapter 7 bankruptcy estate, appellee,
v.
Jeff CHRISTENSEN et al., appellees, and
Charter West National Bank, garnishee-appellant.
No. S-08-1212.
Supreme Court of Nebraska.
December 4, 2009.
*203 Jeffrey A. Silver for garnishee-appellant.
Brett S. Charles, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellee Richard D. Myers.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
This is an appeal from an order finding Charter West National Bank (Charter West), as garnishee, liable to judgment creditor Richard D. Myers, trustee of the Floors & More, Inc., bankruptcy estate. Charter West contends that the district court failed to consider its properly perfected security interest in the judgment debtor's bank deposit accounts when determining liability.

FACTS
The facts are largely undisputed and arise primarily out of a banking relationship between Charter West and Gencon, Inc., a general contractor formerly known as Christensen Interior Contractors, Inc. In September 2005, Gencon executed a commercial security agreement granting Charter West a security interest in, among other things, all of Gencon's deposit accounts with Charter West. The security interest applied to all current and future loan proceeds advanced by Charter West to Gencon. Charter West perfected its security interest in 2005 by filing a Uniform Commercial Code (U.C.C.) financing statement with the Nebraska Secretary of State.
In 2006 and 2007, Charter West made various loans to Gencon, all documented by promissory notes. In January 2008, the trustee of the bankrupt Floors & More, Inc., which had provided materials and services to Gencon, obtained a default judgment in the amount of $10,450.65 against Gencon in the U.S. Bankruptcy Court for the District of Nebraska. On February 14, the trustee sought to enforce the judgment by commencing a garnishment proceeding against Charter West in the district court for Douglas County. In his affidavit, the trustee alleged that Charter West "ha[d] property of and [was] indebted to" Gencon. Charter West received the summons and order of garnishment by certified mail on February 20. At the time the garnishment summons was received, Gencon's loans with Charter West were in excess of $400,000 and were in default.
On the day the summons was received, Gencon's deposit account at Charter West had a balance of $30,702.06. After its *204 receipt of the summons in garnishment, Charter West continued to honor checks written on Gencon's account. Charter West's president testified that the bank chose to honor the checks because it was aware that Gencon had recently commenced a large construction project and the bank thought its best chance of recovering its indebtedness from Gencon was to give Gencon an opportunity to succeed with the new project. The balance of Gencon's account was $26,561.23 on February 21, 2008; $25,385.31 on February 22; and $571.45 on February 25. On February 26, the account was overdrawn by $2,360.22, and on February 27, it was overdrawn by $4,498.33. Charter West did not exercise its right to set off the amount in Gencon's account to cover the defaults on the loans until sometime after February 29. Gencon ultimately ceased doing business, and Charter West wrote off losses in excess of $400,000.
In its answers to the interrogatories served in the garnishment proceeding, Charter West responded affirmatively to the question of whether it had "property belonging to the judgment debtor, or credits or monies owed to the judgment debtor, whether due or not." Charter West listed the "[p]roperty of the judgment debtor in [its] possession" to be "Deposits." It noted, however, that the money or credits were "not due and owing to the Debtor since all of Debtor's property is subject to a perfected security interest in favor of Charter West."
After receiving Charter West's answers to the garnishment interrogatories, the trustee filed an application to determine Charter West's liability as a garnishee. The district court conducted an evidentiary hearing and found Charter West liable to the trustee in the full amount of the trustee's $10,450.05 claim. The court reasoned that Charter West did not comply with the Nebraska garnishment statutes because it failed to hold all funds in Gencon's account after receiving the garnishment summons and further found that such failure waived Charter West's right to a setoff. The court did not specifically analyze the effect of Charter West's perfected security interest in the deposit account.
Charter West filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

ASSIGNMENT OF ERROR
The sole error assigned is that the court erred in finding Charter West liable as a garnishee in light of Charter West's perfected security interest in Gencon's deposit account.

STANDARD OF REVIEW
Garnishment is a legal proceeding. To the extent factual issues are involved, the findings of the fact finder will not be set aside on appeal unless clearly wrong; however, to the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below.[2]

ANALYSIS
Garnishment is a legal aid in the execution of a judgment; it is a method by which a judgment creditor can recover against a third party for the debt owed by *205 a judgment debtor.[3] Under Nebraska's garnishment statutes, a judgment creditor may request that the court issue a summons of garnishment against any person or business which "has property of and is indebted to the judgment debtor."[4] The garnishee then must answer interrogatories and disclose "the property of every description and credits of the defendant in his possession or under his control" at the time of the garnishment.[5] A garnishee can be discharged if he chooses to "pay the money owing to the defendant by him" into court.[6] But if the garnishee does not pay the funds into court and the garnishor is not satisfied with the garnishee's answers to the interrogatories, the garnishor may file an application to determine the liability of the garnishee, and "may allege facts showing the existence of indebtedness of the garnishee to the defendant or of the property and credits of the defendant in the hands of the garnishee."[7] After conducting an evidentiary hearing, the court may then find the garnishee liable if the garnishee was either "indebted to the defendant" or "had any property or credits of the defendant, in his possession or under his control at the time of being served with the notice of garnishment."[8]
A garnishee's liability is to be determined as of the time the garnishment summons is served.[9] The claim of a judgment creditor garnishor against a garnishee can rise no higher than the claim of the garnishor's judgment debtor against the garnishee.[10] Accordingly, in determining the liability of a garnishee to a garnishor, the test is whether, as of the time the summons in garnishment was served, the facts would support a recovery by the garnishor's judgment debtor against the garnishee.[11]
In this case, the trustee is the judgment creditor, or garnishor; Gencon is the judgment debtor; and Charter West is the garnishee. The case turns on the question of whether, on the date the garnishment summons was served, Gencon had a right to the deposit account which was superior to that of Charter West. Only if that were so could Charter West have been "indebted to" or holding "property or credits of" Gencon within the meaning of the garnishment statutes and therefore liable as a garnishee.[12]
It is undisputed from the record that Charter West had a perfected security interest in Gencon's deposit account which predated the trustee's judgment and the service of garnishment interrogatories, that Gencon was in default on the loans secured thereby on the date that the garnishment summons was issued, and that the amount in default far exceeded the balance in the deposit account on that date. Under article 9 of the U.C.C., a creditor with a perfected security interest has certain rights and remedies when a debtor defaults under a loan agreement.[13] *206 Under the U.C.C. as enacted in Nebraska, after default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the . . . security interest . . . by any available judicial procedure."[14] A secured party can take possession of collateral after default "without judicial process, if it proceeds without breach of the peace."[15] Even more specifically, if, after default, the secured party "holds a security interest in a deposit account perfected by control," it "may apply the balance of the deposit account to the obligation secured by the deposit account."[16] A bank "has control of a deposit account" if it "is the bank with which the deposit account is maintained."[17] Thus, upon Gencon's default prior to the service of the garnishment summons, Charter West had the right to enforce its perfected security interest in the deposit account simply by applying the balance of the account to Gencon's loan obligations.
The question presented here is whether the fact that Charter West did not exercise that right until after it was served with the garnishment summons operated to extinguish its priority as a secured creditor and to subordinate its interest to that of the garnishor. In concluding that it did, the district court relied upon our decisions in Davis Erection Co. v. Jorgensen[18] and United Seeds v. Eagle Green Corp.[19] Both of these cases involved claimed setoffs asserted as a defense to garnishment proceedings. In United Seeds, we held that in order to maintain a setoff, a party must demonstrate an intent and decision to exercise the right to setoff, a subsequent action which completes the setoff, and a record which verifies that the action was taken. We determined in that case that the district court had correctly found that a garnishee bank had not exercised a valid setoff. Citing an Oregon case,[20] we also held that the bank had waived any right of setoff by allowing the judgment debtor to draw on the garnished account after notice of garnishment was received. In Davis Erection Co., which involved a claimed set-off arising from amounts due on related construction contracts, we reversed a judgment for the garnishee upon a determination that it had not exercised a right of setoff under the test adopted in United Seeds as of the date it was served with garnishment summons. In this case, the district court reasoned that because Charter West had not completed the three steps held essential to a setoff in United Seeds prior to its receipt of the garnishment summons, and had honored checks drawn on the Gencon account after receiving the summons, it had not established a right of setoff and had waived any claimed right.
United Seeds and Davis Erection Co. are distinguishable from this case in that neither involved a garnishee with a prior perfected security interest in the property which was the subject of the garnishment proceeding. Under Nebraska law, a "perfected security interest . . . has priority over a conflicting unperfected security interest"[21] in the same collateral. Application *207 of the principles of United Seeds and Davis Erection Co. to the facts of this case would ignore and indeed negate the statutory priority to which a holder of a prior perfected security interest is entitled. Due to the existence of Charter West's perfected security interest, Gencon had no enforceable right to the proceeds of the deposit account on the date that the garnishment summons was served and therefore, the trustee could have no such right. In other words, the trustee could not acquire a claim by garnishment which was superior to the claim of Charter West arising from its perfected security interest. We therefore conclude as a matter of law that by virtue of its perfected security interest in the deposit account, which was far exceeded by the amount of Gencon's indebtedness then in default, Charter West was not "indebted to" or holding "property or credits of" Gencon at the time of service of the garnishment summons.[22]
Because of this basic factual distinction, the waiver principle articulated and applied in United Seeds is likewise inapplicable in this case. The record reflects that Charter West made a calculated business decision to honor certain checks drawn on the Gencon account as a means of enabling Gencon to perform on a contract and thus produce revenue which could be applied to its indebtedness. In so doing, Charter West was placing some of its collateral at risk in order to produce receivables of an anticipated greater amount which would also be subject to its perfected security interest and applicable to Gencon's debt. Because Charter West had rights in the collateral superior to that of the trustee, this decision cannot be viewed as a waiver of Charter West's security interest.
Finally, we address the trustee's argument that Charter West failed to comply with § 25-1056(1) after service of the garnishment summons and should therefore be foreclosed from asserting its right to the deposit account. The pertinent provisions of § 25-1056(1) require that, except when wages are involved, a party served with a garnishment summons "shall hold the property of every description and the credits of the defendant in his or her possession or under his or her control at the time of the service of the summons and interrogatories until the further order of the court." The trustee's argument is based upon the principle that because the garnishment statutes are in derogation of common law, they are to be strictly construed.[23] Thus, the trustee argues, "[r]egardless of its security interest, Charter West violated the Nebraska garnishment statutes and is liable to the Trustee for the judgment amount."[24] This argument removes the strict construction rule from its proper context. Because the garnishment statutes give the judgment creditor rights not available to the judgment creditor at common law, the statutes must be construed strictly so as to limit those rights to only those granted, and not to deprive third parties of their lawful rights.[25] But the trustee asks us to apply the strict construction rule proactively to make a garnishee liable to a judgment creditor for a debt which the garnishee does not owe the judgment debtor. We decline to do so. Furthermore, because we conclude on the facts of this case that the deposit account was not the property of Gencon and therefore not subject to garnishment, Charter West's failure to strictly comply with the garnishment statutes *208 was not prejudicial to any party and did not frustrate the objective of the garnishment statutes in any way.

CONCLUSION
For the reasons discussed, we conclude that the district court erred in entering judgment in favor of the trustee. We reverse the judgment of the district court and remand the cause with directions to dismiss the garnishment proceeding.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. § 24-1106(3) (Reissue 2008).
[2] See Davis Erection Co. v. Jorgensen, 248 Neb. 297, 534 N.W.2d 746 (1995). See, also, Petersen v. Central Park Properties, 275 Neb. 220, 745 N.W.2d 884 (2008); Spaghetti Ltd. Partnership v. Wolfe, 264 Neb. 365, 647 N.W.2d 615 (2002).
[3] See 38 C.J.S. Garnishment § 1 (2008).
[4] Neb.Rev.Stat. § 25-1056(1) (Reissue 2008).
[5] Neb.Rev.Stat. § 25-1026 (Reissue 2008).
[6] Neb.Rev.Stat. § 25-1027 (Reissue 2008).
[7] Neb.Rev.Stat. § 25-1030 (Reissue 2008).
[8] Neb.Rev.Stat. § 25-1030.02 (Reissue 2008).
[9] See Spaghetti Ltd. Partnership v. Wolfe, supra note 2.
[10] Fokken v. Steichen, 274 Neb. 743, 744 N.W.2d 34 (2008); Spaghetti Ltd. Partnership v. Wolfe, supra note 2.
[11] Davis Erection Co. v. Jorgensen, supra note 2.
[12] See § 25-1030.02.
[13] See McFarland v. Brier, 850 A.2d 965 (R.I. 2004).
[14] Neb. U.C.C. § 9-601(a)(1) (Cum. Supp. 2008).
[15] Neb. U.C.C. § 9-609(b)(2) (Reissue 2001).
[16] Neb. U.C.C. § 9-607(a)(4) (Reissue 2001).
[17] Neb. U.C.C. § 9-104(a) (Reissue 2001).
[18] Davis Erection Co. v. Jorgensen, supra note 2.
[19] United Seeds v. Eagle Green Corp., 223 Neb. 360, 389 N.W.2d 571 (1986).
[20] See Coastal Adj. Bureau v. Hutchins, 229 Or. 418, 367 P.2d 430 (1961).
[21] Neb. U.C.C. 9-322(a)(2) (Reissue 2001).
[22] See § 25-1030.02.
[23] Spaghetti Ltd. Partnership v. Wolfe, supra note 2.
[24] Brief for appellee Myers at 11.
[25] See 38 C.J.S., supra note 3, §§ 3 and 5.